HAWTHORNE, Justice.
 

 Cecil W. Walcup, alleging himself to be a resident of this state, instituted this suit for a divorce from his wife on the ground that they had been living separate and apart for more than two years, under the provisions of Act 269 of 1916, as amended by Act 31 of 1932 and Act 430 of 1938. From a judgment in favor of the wife and rejecting his demands the plaintiff has appealed.
 

 This suit was filed on March 1, 1945, while plaintiff was a radioman first class in the United States Naval Reserve. He and defendant were married in Tomah, Wisconsin, on November 25, 1937, and of this marriage two children were born. On February 16, 1941, in the State of Wisconsin plaintiff entered the naval forces of the United States. He contended that at the time of his enlistment he and his wife had been living separate and apart since May, 1940, but this statement was emphatically denied by the wife.
 

 After his enlistment plaintiff was stationed by the naval authorities at various posts within the United States, among these being Indianapolis, Indiana, and Norfolk, Virginia. He was then assigned to New Orleans, arriving in this city on July 28, 1941. He was engaged in radio work at naval headquarters, in the Federal Building and lived at several different places in the city — the Chalmette Hotel, 121 North Rendon Street, 2405 Prytania Street, and 1032 St. Charles Avepue — , his subsistence being paid by the naval authorities.
 

 In November, 1941, after plaintiff had been in New Orleans for a period in excess of five months, he was assigned to duty at Sabine Pass, Texas. In July of 1942, he was transferred from this Texas post to the Algiers Naval Station in New Orleans, where he remained until July, 1944. He testified that this transfer to New Orleans was made at his own request.
 

 After his return to New Orleans, at. his suggestion his wife and two children joined
 
 *848
 
 him on November 16, 1942, and resided with him in quarters assigned to him at the Algiers Naval Station until January 16, 1943. At that time his wife went back to her home in Wisconsin with the children. Before she left New Orleans, she was told by her husband not to return to New Orleans, to go where she wanted to and stay. These parties have lived separate and apart since that date, and for more than two years prior to the institution of this suit.
 

 -While still in New Orleans during this period, plaintiff joined, and became a member of,- the First Methodist Church, located ■on St. Charles Avenue in this city.
 

 In the years 1943 and 1944, while plaintiff was stationed in New Orleans, he filed two suits for divorce against his wife, one in the Parish of-Orleans, State of Louisiana, and the other in Monroe County, Wisconsin. The suit in the,Parish of Orleans was dismissed, and in the action filed in Wisconsin plaintiff’s demands were rejected after trial on the merits.
 

 In July of 1944, plaintiff was assigned to the Atlantic Fleet. Before leaving New Orleans for this duty, he gave the pastor of his church a power of attorney and stored his dishes, blankets, and other household furnishings in a warehouse in the City of New Orleans.
 

 Plaintiff testified that while with the Atlantic Fleet he sent for ballots for the purpose of voting at an election held in this state during the latter part of 1944, and that they were sent to him, although he admitted that he was not then registered as a qualified voter, having considered it unnecessary to register in view of the fact that he had lived in New Orleans for,two years.
 

 In January, 1945, plaintiff returned to this country and to New Orleans. The present suit was instituted on March 1, 1945, while he was still in the service.
 

 On April 2, 1945, subsequent to the filing of this suit but prior to trial, plaintiff registered as a voter in the Fifteenth Ward, Twelfth Precinct, of the Parish of Orleans.
 

 Plaintiff instituted this suit under the provisions of Act 269 of 1916, as amended by Act 31 of 1932 and Act 430 of 1938, which provides in Section 1 that, when married persons have been living separate and apart for a period of two years or more, either party to the marriage contract may sue for an absolute divorce in the courts of his or her residence within this state, provided such residence shall have been continuous for the period of two years.
 

 The first and principal question for our decision is whether the plaintiff, Cecil W. Walcup, is a resident of this state within the meaning of the act.
 

 In two very recent opinions this court has had cause to interpret the meaning of the word “residence” as found in the act. In Spratt v. Spratt, 210 La. 370, 27 So.2d 154, we said:
 

 “Residence essential to jurisdiction in a divorce proceeding instituted under the pro
 
 *850
 
 visions of Act No. 430 of 1938 means actual residence coupled with the intention to make the place of residence a permanent place of abode. Lepenser v. Griffin, 146 La. 584, 83 So. 839.”
 

 In Spring v. Spring, 210 La. 358,
 
 27
 
 So. 2d 358, 359, decided June 14, 1946, this court stated:
 

 “ * * * The only reasonable interpretation of the Act, insofar as it authorizes either party to a marriage contract to sue in the courts of his or her residence, is that it undoubtedly contemplates a bona fide residence or domicile.”
 

 At the time plaintiff enlisted in the naval service of his country, he was living and residing in the State of Wisconsin, which, of course, is still his residence unless he has abandoned such residence and established a new one elsewhere; for, as pointed out in Spring v. Spring, supra, “All of the authorities agree that a person inducted into the military service retains his residence in the state from which he was inducted until he has abandoned it and established a new residence elsewhere. The fact that one lives in a state under military compulsion in the absence of any act showing an intention to establish a residence cannot be held to satisfy the factual requirements for a residence of choice.”
 

 Plaintiff came to Louisiana not as his own voluntary act but under military compulsion. If, after arriving in this state, it became his bona fide intention to establish a permanent residence here, he has the burden of overcoming the legal presumption that he has not changed his domicile. For under the jurisprudence of this state, as said by this court in First Nat. Bank of Lumberton, Miss., v. Hinton et al., 123 La. 1018, 49 So. 692, 694, “The question of domicile is one of intention as well as of fact, and * * * the parties seeking to show that it has been changed to this state must overcome the legal presumption! that it has not been changed by positive and satisfactory proof of the establishment of a domicile here as a matter of fact with the intention of remaining here and of abandoning the former domicile.”
 

 During the trial of the case in the lower court, plaintiff testified that from the time he arrived in New Orleans on July 28, 1941,-it was his full intention to make this his permanent home; that he liked the climate- and the people and intended to reside here: regardless of what happened; that he considered New Orleans his home.
 

 It is true that plaintiff’s own statements as to his intention to make New Orleans, his permanent home would not, in themselves, be sufficient, uncoupled , with any other evidence or any acts on his part to-show such intent, as pointed, out by thi& court in Spring v. Spring, supra. However, in this case plaintiff does not rely on his own unsupported declarations of his intention to establish a permanent or bona fide residence in this state. One of his witnesses, the pastor of the church which-.he' had joined in New Orleans, testified that he had known plaintiff for three years andi
 
 *852
 
 was well acquainted with him; that plaintiff had been a member of his church for two years previous to the date on which he gave his testimony, and that several times during this period plaintiff had declared to him that it was his intention to make New-Orleans his home.
 

 After a review and careful consideration of all the testimony and evidence, we have come to the conclusion that it was plaintiff’s intention to make the Parish of Orleans his permanent place of abode ;• that he has discharged the burden of establishing this intention by positive and satisfactory proof, thus overcoming the legal presumption that he has not changed his residence from Wisconsin to this state, and that he is therefore a bona fide resident of the State of Louisiana within the meaning of the act.
 

 We are supported in this view not only by his own declarations of intention but by statements of such intention made on numerous occasions while he was stationed in this city to a disinterested witness, the pastor of his church, whose sincerity and integrity cannot be questioned.
 

 Plaintiff testified that he had no connections at any other place and had no desire to return to Wisconsin; that from the first he had liked the climate here and made good friends, and considered this his home and intended to remain.
 

 That these were his bona fide intentions is borne out by the fact that while on his first, assignment in New Orleans he asked his wife and children to join him here; that he was returned to New Orleans from Sabine Pass, Texas, at his own request in July of 1942; that upon his return to New Orleans he sent to Wisconsin for his family with the intention of establishing a home for them-here, and they actually came and lived here with him until the separation; that while in the City of New Orleans he joined a local church and attended services regularly; that upon being assigned to the Atlantic Fleet he executed in behalf of his pastor a power of attorney and stored his household furnishings in a local warehouse.
 

 That plaintiff considered himself to be a bona fide resident of the City of New Orleans is conclusively shown by the fact that while assigned to duty with the Atlantic Fleet he requested that ballots be sent to him for the purpose of voting in an election held in this state in the latter part of the year 1944, plaintiff stating that he thought he was entitled to vote for the reason that he had been a resident of the state at that time for a period of two years.
 

 On his return to New Orleans after duty with the Atlantic Fleet, plaintiff on April 2, 1945 (after this suit was filed but before trial), registered as a voter in the Fifteenth Ward, Twelfth Precinct, of the Parish of Orleans. Although this act may have been self-serving in its nature, in our opinion it shows that plaintiff considered himself to be a bona fide resident of this state.
 

 It is not our intention to hold, nor do we hold, that the living separate and apart of
 
 *854
 
 married persons caused solely by military service is within the meaning of the term “living separate and apart” as used in the act. It is true.that in this case plaintiff at the time of the separation was in the military service, but the act of separation is admitted by both parties to this lawsuit, and their living separate and apart was not due to plaintiff’s military service, for, under the facts of this case, these parties could have lived together if they had mutually desired until he was assigned to the Atlantic Fleet in July of 1944.
 

 For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of Cecil W. Walcup, plaintiff-appellant, and against Hazel D. Honish Walcup, his wife, defendant-appellee, decreeing a divorce a vinculo matrimonii, forever dissolving the bonds of matrimony heretofore existing between them; appellant to pay all' costs.