STOKER, Judge.
This is a dispute over the estate of Salvador Caprito, who died on March 9, 1982, at the age of ninety-eight. The dispute is between Mr. Caprito’s children, James C. Mayhew, a/k/a Noel Caprito, and Gertrude Caprito Daily, and his niece and nephew, Marguerite Caprito Dial and J.T. Caprito. Gertrude is represented by her guardian and daughter, Helen Vaughan.
FACTS
Mr. Caprito was born on December 23, 1883, in Franklin, Louisiana. He married Annie Ehrhardt on April 18, 1912, and they were divorced on December 14, 1915. One child of the marriage, Gertrude, was born before the divorce, and another, Noel Ca-prito, was born after the divorce on August 17, 1916. Apparently, Noel has used the name of his mother’s second husband for most of his life, and for purposes of clarity we will refer to him in this opinion as Mr. Mayhew.
Neither Mr. Caprito’s children nor his niece and nephew had contact with him until quite late in his life. Very little is known about Mr. Caprito’s whereabouts after his divorce, but it appears that he lived and conducted his business in Fort Worth, Texas, from at least 1955 until early 1977, just before his long-time friend and accountant, William McKinney, instituted guardianship proceedings in Tarrant County, Texas, in which Fort Worth is located.
According to Mr. McKinney, Mr. Caprito lived on a ranch in Tarrant County from around 1955 until he sold it in 1969. At that time, Mr. Caprito moved into a highrise apartment building for the elderly in Fort Worth where he remained until 1974 or 1975. After staying a short time with relatives in Alabama, he then moved into a hotel also in Fort Worth where he remained until early in 1977.
During his lifetime Mr. Caprito amassed a substantial fortune as an oilfield entrepreneur. Despite this fact, he apparently acquired very little personal property, but instead donated large amounts of money to individuals and charities. From the time he sold his ranch until his death, Mr. Capri-to literally lived “out of a suitcase.” A short time prior to institution of the guardianship proceedings, substantially all of Mr. Caprito’s assets were converted to certificates of deposit in a Fort Worth bank.
Sometime in February, 1977, Mr. Caprito went to Franklin, Louisiana', to stay with his nephew, J.T. Caprito. By proceedings instituted in Tarrant County, Texas, Mr. McKinney was appointed temporary guardian over the person and estate of Mr. Capri-to on July 5, 1977. Near the end of 1977, Mr. Caprito went to Lake Charles, Louisiana, to stay with his niece, Marguerite Ca-prito Dial. On January 17, 1978, Mr. Capri-to was declared incompetent by the Texas *590 court, and Marguerite was named his permanent guardian.
Mr. Caprito remained in Marguerite’s home until December of 1981, when he fell and broke his hip. She was paid $891 per month, later increased to $961, to care for him. During that time, his guardianship changed twice. On June 7, 1978, his granddaughter, Helen Vaughan, replaced Marguerite as permanent guardian. During her term, Helen applied for and obtained an order from the Tarrant County court to transfer the certificates of deposit to a bank in Orange County, Texas, her place of domicile. She also obtained an order transferring the entire guardianship proceeding to Orange County. Helen resigned after a short time, and Mr. Mayhew was named permanent guardian on November 14,1978. On December 15, 1978, Mr. Mayhew obtained an order from the Orange County court permitting him to cash in the Texas certificates of deposit and buy new ones in the State of Louisiana, primarily in banks in Rapides Parish. The guardianship proceedings remained in the Orange County court.
After Mr. Caprito’s hospitalization in Lake Charles for hip surgery in December, 1981, Mr. Mayhew made arrangements for him to be placed in the Hilltop I Nursing Home in Pineville, Louisiana, where Mr. Mayhew lived. Mr. Caprito was admitted to Hilltop on January 7, 1982, where he remained until his final illness. He died on March 9, 1982, at the Rapides General Hospital in Alexandria, Louisiana.
On March 17, 1982, Mr. Mayhew and Helen Vaughan, representing her mother, filed a petition in Rapides Parish to probate a statutory will executed by Mr. Caprito on February 16, 1982, during his stay at Hilltop, leaving his entire estate to his children. (The cities of Pineville and Alexandria are located in Rapides Parish.) The order for probate was signed on March 17, and the judgment of recognition and possession was signed on March 26. Plaintiffs, J.T. Caprito and Marguerite Caprito Dial, filed a petition to annul the probated testament on May 17, 1982.
In the meantime, also on March 17, 1982, J.T. and Marguerite had filed for probate in Orange County, Texas, a will executed by Mr. Caprito on October 7, 1977, leaving his entire estate to them. As to the proceedings in Louisiana, plaintiffs filed a number of pretrial motions objecting to the jurisdiction and venue of the Louisiana court. These motions were denied and the Louisiana court considered the merits of the case. As to the merits, plaintiffs argue that the statutory will formalities were not met in the execution of the Louisiana will, that Mr. Caprito lacked the mental capacity to make a will, and that the procedural requirements for opening a succession were not met. Because we find that Louisiana did not have jurisdiction over Mr. Caprito’s estate, and the presence of his movable property in Rapides Parish did not establish venue there, we do not reach the merits of plaintiffs’ other claims.
ISSUES
In support of their position that the succession was properly opened in Rapides Parish, Louisiana, defendants rely on LSA-C.C.P. art. 2811 which provides:
“A proceeding to open a succession shall be brought in the district court of the parish where the deceased was domiciled at the time of his death.
“If the deceased was not domiciled in this state at the time of his death, his succession may be opened in the district court of any parish where:
(1) Immovable property of the deceased is situated; or,
(2) Movable property of the deceased is situated, if he owned no immovable property in the state at the time of his death.”
In succession proceedings venue is jurisdictional and cannot be waived. Succession of McElwee, 276 So.2d 391 (La.App. 2d Cir.1973); LSA-C.C.P. arts. 44 and 2811. Defendants argue that Mr. Caprito was domiciled in Rapides Parish at the time of his death. Alternatively, they argue that if Mr. Caprito was a nonresident of this *591 State, the succession was properly opened in Rapides Parish by virtue of the location of some of his movable property there. We will consider these arguments separately-
DOMICILE
Defendants assert that plaintiffs failed to establish that Mr. Caprito was ever domiciled in Texas, and that the Texas guardianship proceedings were conducted as though Mr. Caprito was a nonresident. This is clearly not the case. Records from the Texas proceedings entered into evidence in this matter before us clearly indicate that the Texas Court proceeded as though Mr. Caprito was a domiciliary of that state. In fact, in some pleadings the Texas judge specifically deleted references to Mr. Caprito as a nonresident.
Despite the scarcity of facts regarding Mr. Caprito’s activities prior to 1977, we find that he did establish a domicile in Texas by virtue of his having owned a ranch there and residing there for, what seems to have been for him, a regular basis. To find otherwise would be to permit a collateral attack on the Texas decree. Such an attack may not be made unless the party seeking to deny full faith and credit to the decree shows that it could be collaterally attacked in the initial court. Didier v. Didier, 230 So.2d 436 (La.App. 1st Cir. 1969), writ refused, 255 La. 806, 233 So.2d 248 (1970). We also note that defendants participated in the Texas court proceedings without objection, even seeking and obtaining rulings for themselves.
Having determined that Mr. Caprito was domiciled in Texas when he was placed under guardianship, we must now decide whether his domicile was changed to Louisiana. The party seeking to show a change in domicile must produce sufficient evidence so that no reasonable doubt remains as to the intent to abandon the old and create a new domicile. Succession of Barger, 217 So.2d 779 (La.App. 4th Cir.1969), writ refused, 253 La. 877, 220 So.2d 459 (La.1969). The facts of this case are somewhat similar to those before the court in Barger. Mrs. Barger owned a home in Ascension Parish where she lived until January 4, 1967. She left at that time to stay with a friend in New Orleans. She moved into a nursing home in Jefferson Parish on May 16, 1967, where she resided until her death on February 1, 1968. Mrs. Barger kept her home in Ascension Parish even though she was not able to return to it due to her poor health. The court in Barger found that there had not been a change of domicile.
During the last several years of his life, Mr. Caprito suffered from a number of diseases, including kidney infection, organic brain syndrome and congestive heart failure. He required almost total care during his stay with Marguerite, and was bedridden while he was in the nursing home. While it is true that Mr. Caprito brought all of his personal effects with him to Marguerite’s house and, subsequently, to the nursing home, we do not find that sufficient to show a change in domicile. After selling his ranch, Mr. Caprito ■ apparently lived almost as a transient, keeping everything in his suitcase. It is clear from the record that his change of residence was brought about due to health reasons rather than an intent to change his domicile. From these facts, we cannot say that it has been shown beyond a reasonable doubt that Mr. Caprito’s domicile was changed.
Defendants also argue that Mr. Ca-prito could be found to have had his domicile in Rapides Parish by virtue of LSA-C.C. art. 39 which provides that “a person of full age, under interdiction, has his domicile with his curator.” We do not agree that this Louisiana provision is applicable to Mr. Caprito’s situation, because Texas has established and maintained its jurisdiction in this matter.
In appointing a guardian for the person and estate of Mr. Caprito, the Texas court exercised full jurisdiction over him. Mr. Mayhew was clearly appointed as a nonresident guardian who was required to designate an agent for service of process in Texas. Thus, the Texas court retained its *592 jurisdiction over Mr. Caprito’s person and estate.
Defendants cite a number of cases in support of their position that Mr. Caprito’s domicile was that of Mr. Mayhew, but we do not find those authorities persuasive. In the cited cases the guardian was found to have authority to change the domicile of the ward either by virtue of the nature of the guardianship or, in one case, by specific permission of the court. Mr. Mayhew availed himself of Texas law in seeking to be appointed the guardian of Mr. Caprito and has never sought the Texas court’s permission for a change in the domicile of Mr. Caprito. After being appointed guardian, Mr. Mayhew continued to seek the permission of the Texas court in his dealings with Mr. Caprito’s property. Under the circumstances, we cannot find that Mr. Mayhew had authority to change Mr. Ca-prito’s domicile merely by placing him in a nursing home in Rapides Parish. See 25 Am.Jur.2nd Domicil, secs. 82-83.
LOCATION OF MOVABLE
We determined in the previous discussion that Mr. Caprito remained domiciled in Texas, thus, Rapides Parish does not have jurisdiction to open his succession on the basis of his domicile. Defendants argue alternatively that Rapides Parish has jurisdiction over the succession by virtue of the location of some of Mr. Caprito's movable property in that parish. We do not find that the circumstances under which Mr. Caprito’s property came to be located in Rapides Parish warrant the exercise of that parish’s jurisdiction over it.
Mr. Mayhew obtained permission from the Texas court to sell the certificates of deposit in Texas banks and reinvest the funds in Louisiana banks. The change was permitted, apparently for Mr. Mayhew’s convenience since he is a Louisiana domiciliary. The Louisiana banks from which Mr. Mayhew purchased certificates of deposit on behalf of Mr. Caprito filed receipts for safekeeping with the Orange County, Texas court in which they agreed not to release funds without permission of the Orange County court. Mr. Mayhew continued to administer Mr. Caprito’s estate through the Orange County court, filing the required bonds, statements of annual accounting, and seeking that court’s permission to spend funds of the estate. Clearly, the movable property was under the continuing jurisdiction of the Texas court. Because the property was in this State only through permission of the Texas court, we hold that its mere location here did not confer jurisdiction over it.
DECREE
For the above reasons, the judgment of the trial court is reversed. All claims regarding the succession of Salvador Caprito are dismissed. Costs at trial and on appeal are assessed to defendants-appellees.
REVERSED AND RENDERED.