468 So.2d 561 (1985)
SUCCESSION OF Salvador CAPRITO a/k/a S. Caprito.
No. 84-C-2180.
Supreme Court of Louisiana.
May 14, 1985.
Rehearing Denied June 13, 1985.
G. Earl Humphries, III, Guy Humphries, Jr., Humphries & Humphries, Alexandria, for applicant.
*562 Pannal Alan Sanders, Lynnwood Sanders, Sanders & Owens, Orange, for respondent.
MARCUS, Justice.
This litigation involves an action to annul the probated testament of Salvador Caprito filed by his niece and nephew, Marguerite Caprito Dial and J.T. Caprito, against his children, James C. Mayhew and Gertrude Caprito Daily. Gertrude Caprito Daily is represented by her guardian and daughter, Helen Vaughan.
Caprito was born in Franklin, Louisiana on December 23, 1883. He married Annie Erhardt on April 18, 1912, and they divorced December 14, 1915. Caprito was awarded legal custody of the daughter, Gertrude; a son, Noel Caprito, was born after the divorce. Noel uses the name of his stepfather and is referred to as James Mayhew.
After the divorce, Caprito had no contact with his children or other relatives in Louisiana until very late in his life. His whereabouts were unknown until about 1955. He was apparently quite successful as an oil-field entrepreneur, and from at least 1955 until 1977 he lived and conducted business in Fort Worth, Texas. He was living on a large ranch outside of Fort Worth when William McKinney, an accountant, began to keep his books in 1963. According to McKinney, Caprito sold the ranch in 1969 and moved to Hunter Plaza, an apartment facility for the elderly located in Fort Worth. He left Hunter Plaza in 1974 or 1975 and moved to the Blackstone Hotel in Fort Worth. Despite Caprito's substantial fortune, he acquired few personal belongings and from the sale of his ranch until his death he lived out of one suitcase. He donated large amounts of money to individuals and charities.
In January or February of 1977, Caprito left Fort Worth and went to stay with his nephew, J.T. Caprito, in Franklin, Louisiana. Shortly thereafter, McKinney instituted guardianship proceedings in Tarrant County, Texas. McKinney was appointed temporary guardian over Caprito's person and estate on July 5, 1977. Although McKinney had been handling Caprito's financial affairs for some time, he testified that Caprito continued to write his own checks even after the temporary guardianship was instituted. In late 1977, a Tarrant County jury found that Caprito was incompetent to manage his property and financial affairs and Marguerite Caprito Alexander (now known as Marguerite Caprito Dial) was appointed permanent guardian over his person and estate. Caprito then went to live with Marguerite in Lake Charles, Louisiana. She was paid $891 per month, later increased to $956, to care for him.
Helen Vaughan, Caprito's granddaughter, replaced Marguerite as permanent guardian on June 7, 1978. She obtained a transfer of the estate and guardianship proceedings to Orange County, Texas. Helen Vaughan resigned as guardian on October 31, 1978 and James Mayhew was appointed as successor guardian. Mayhew secured an order from the Orange County court allowing him to transfer the funds of Caprito's estate, which comprised certificates of deposit totaling about $280,000, to Louisiana banks. He filed safekeeping receipts with the Texas court which provided that the funds would not be released without order of the Orange County court. Mayhew subsequently obtained the Texas court's permission to enter into various transactions with the funds.
In December of 1981, while still living with Marguerite in Lake Charles, Caprito fell and broke his hip. He was hospitalized for hip surgery and upon his recovery Mayhew placed him in Hilltop I nursing home in Mayhew's home town of Pineville, Louisiana in Rapides Parish. Caprito remained at Hilltop from January 1982 until early March 1982. He executed a statutory will on February 16, 1982 which left his entire estate to his children, James Mayhew and Gertrude Caprito Daily, and revoked all prior wills. Caprito, age 98, died March 9, 1982 at Rapides General Hospital in Alexandria.
Mayhew and Daily filed a petition on March 17, 1982 in the district court in Rapides Parish to probate the statutory will executed by Caprito while at Hilltop. The will was duly probated, and subsequently Caprito's children were placed in possession of the estate. Thereafter, J.T. Caprito and Marguerite Caprito Dial (nephew and niece) filed an action in the succession proceedings to annul the probated testament on the grounds that Louisiana lacked jurisdiction over Caprito's succession, the form of the will was invalid and Caprito lacked the mental capacity to make the will.[1] After *563 trial on the merits, the court dismissed the action to annul the probated will, finding that Louisiana had jurisdiction over the succession, the will was valid in form and Caprito had the requisite mental capacity to execute the will. The court of appeal reversed, finding that Louisiana lacked jurisdiction over Caprito's succession.[2] It did not address the will's validity or Caprito's capacity. We granted certiorari to review the correctness of that decision.[3]
Jurisdiction over succession proceedings is determined by La.Code Civ.P. art. 2811, which provides:
A proceeding to open a succession shall be brought in the district court of the parish where the deceased was domiciled at the time of his death.

If the deceased was not domiciled in this state at the time of his death, his succession may be opened in the district court of any parish where:
(1) Immovable property of the deceased is situated; or,
(2) Movable property of the deceased is situated, if he owned no immovable property in the state at the time of his death. [Emphasis added.]
After review of the record, we find that Caprito established a domicile in Texas from at least 1955 until 1977. If, however, Caprito was domiciled in Louisiana at the time of his death, then the succession was properly brought in Louisiana pursuant to La.Code Civ.P. art. 2811. Thus, the issue is whether Caprito changed his domicile from Texas to Louisiana.[4]
A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there. La.Civ.Code art. 41. This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove. This declaration is made in writing, is signed by the party making it, and registered by the recorder. Id. art. 42. In case this declaration is not made, the proof of this intention shall depend upon circumstances. Id. art. 43. The question of domicile is one of intention as well as fact, and where it appears that a domicile has been acquired in another state, the parties seeking to show that it has been changed to this state must overcome the legal presumption that it has not been changed by positive and satisfactory proof of the establishment of a domicile here as a matter of fact with the intention of remaining here and of abandoning the former domicile. Walcup v. Honish, 210 La. 843, 28 So.2d 452 (1946); First National Bank of Lumberton, Miss. v. Hinton, 123 La. 1018, 49 So. 692 (1909). Where an interdict has sufficient mentality to do so, he can acquire a domicile in another state. Interdiction of Gasquet, 147 La. 722, 85 So. 884 (1920).
When Caprito came to live in Louisiana, he established residence in the state. The facts must be scrutinized to determine whether he intended to remain in Louisiana. Caprito came to Louisiana in early 1977 of his own accord; Marguerite Caprito Dial testified at the Texas guardianship proceedings that he was not sent for. Most of his known relatives lived in Louisiana and he himself was born in Louisiana. At the guardianship proceedings in December of 1977, Caprito testified that his "home" was in Franklin, Louisiana where his parents were buried. When asked where he intended to spend his final days, he replied, "I'm going to die in Franklin." Caprito brought all of his personal belongings with him when he came to Louisiana in 1977, and he continued to reside in the state from 1977 until his death in 1982. He returned to Texas only twice during that time, once to appear at the guardianship proceedings. His guardian, Mayhew, transferred all of his personal funds to Louisiana banks. Mayhew testified at trial that he planned for his father to remain in Rapides Parish. The strongest evidence of Caprito's intent to establish a domicile in Louisiana, and specifically in Rapides Parish, is found in the statutory will he executed before a notary and three witnesses on February 16, 1982: "I, S. Caprito (Salvador Caprito), a citizen and resident and *564 domiciled in the Parish of Rapides, State of Louisiana...."[5] (Emphasis added.)
Without passing on Caprito's mental capacity to execute the will, we find that Caprito had sufficient mentality to form the intent to acquire a domicile in Louisiana. Gasquet, supra. Defendants, James Mayhew and Gertrude Caprito Daily, established by positive and satisfactory proof that Caprito intended to abandon his Texas domicile and establish a new domicile in Louisiana. They further proved that the Louisiana domicile was in Rapides Parish where the succession proceedings were brought. Thus, defendants overcame the legal presumption that Caprito's domicile had not been changed.[6] Having concluded that Caprito was domiciled in Louisiana at the time of his death, the probated will is not null for lack of jurisdiction. As the court of appeal did not reach the issues involving the validity of the will and Caprito's mental capacity to execute the will, we consider it more appropriate to remand the case to that court for review of these issues.

DECREE
The decision of the court of appeal is reversed. The case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
DENNIS, J., concurs with reasons.
LEMMON, J., concurs and will assign reasons.
LEMMON, Justice, Concurring in part and dissenting in part.
Since the decedent was domiciled in Louisiana at the time of his death and since all of his property was located in Louisiana, there was no constitutional impediment to a Louisiana court's exercising jurisdiction over the succession proceeding.[1] I therefore concur in the majority's holding as to jurisdiction.
However, La. C.C.P. Art. 2811 is a venue article and does not provide the basis for jurisdiction. Article 2811 assumes that some Louisiana court has jurisdiction and provides, as among the Louisiana courts, the parish or parishes in which the proceeding must be brought. Furthermore, since La. C.C.P. Art. 44 mandates that "[t]he venue provided in Articles ... 2811 ... may not be waived", the parishes of proper venue specified in Article 2811 are the only parishes in which a valid judgment may be rendered in a succession proceeding.[2]
Defendants filed a "Motion to Dismiss for Want of Proper Venue" in the trial court, and the motion was overruled. This court has not clearly adjudicated the venue issue. Since the decedent had been domiciled in Calcasieu Parish from 1977 until shortly before his death on March 9, 1982, having been transferred to a nursing home in Rapides Parish (where his curator lived) on January 7, 1982 after hip surgery, and since he never demonstrated his intent to change his domicile to Rapides Parish, the parish of proper venue was Calcasieu Parish.[3] The exception should have been maintained, because as a succession proceeding in a parish of improper venue is null.
NOTES
[1] J.T. and Marguerite had previously petitioned to probate in Orange County, Texas a will executed by Caprito on October 7, 1977 which left the entire estate to them.
[2] 458 So.2d 588 (La.App. 3d Cir.1984).
[3] 462 So.2d 1242 (La.1985).
[4] Caprito's children also argued that he was domiciled in Louisiana by virtue of La.Civ.Code art. 39 and that the presence of his movable property in the state conferred jurisdiction pursuant to La.Code Civ.P. art. 2811(2). Because we find that Caprito was domiciled in Louisiana at the time of his death, we need not reach these arguments.
[5] The will executed in Texas on October 7, 1977 did not specify Caprito's domicile. It stated that he was "of" Tarrant County, Texas.
[6] Plaintiffs aver that the Texas court exercised jurisdiction over Caprito's person and estate by virtue of the guardianship proceedings, and that it retained jurisdiction over his estate when he died because the guardianship was never transferred to Louisiana. They argue that the guardian, Mayhew, could not change Caprito's domicile without permission from the Texas court. We find no substance to plaintiffs' position. Mayhew did not seek to change Caprito's domicile; Caprito came to Louisiana of his own accord before he was adjudged an incompetent. Moreover, as stated above Caprito had sufficient mentality to form the intent to acquire a domicile in Louisiana, Gasquet, supra, and he did so.
[1] A succession proceeding is essentially a proceeding in rem as to the property of the decedent located within the state of the decedent's last domicile. R. Casad, Jurisdiction in Civil Actions § 3.06 (1983). The jurisdiction articles in the Louisiana Code of Civil Procedure do not expressly cover succession proceedings. See La. C.C.P. Art. 1-10. Nevertheless, since no property in other states is involved in this succession, there is no issue of personal jurisdiction over nonresidents who are claiming property out of state.
[2] Thus, succession proceedings are similar to divorce proceedings in that both jurisdiction and venue are based on domicile. See La. C.C.P. Art. 10(7) and 3941. An additional similarity is that venue in both divorce and succession proceedings is not waivable. La. C.C.P. Art. 44.
[3] Mayhew admitted that when he moved the decedent from Calcasieu Parish to the nursing home in Rapides Parish, he simply told decedent they were going for a ride. Other than Mayhew's statement that decedent seemed content in the nursing home, the only evidence of decedent's intent to change his domicile is his statement in the will which is the subject of this dispute. Indeed, Mayhew listed decedent's domicile as Calcasieu Parish in the death certificate and other documents.