11 BAGNERIS, J.
This suit involves an objection to the candidacy of Dwight “Twin” Alcorn for election to the office of member of Louisiana House of Representatives from District 100. This suit claims that Mr. Alcorn “fails to meet the qualifications for the office he seeks for the reason that the defendant does not and has not lived within the boundaries of said District 100 for the prior year as required by law.”
The central issue is whether the court below had proper jurisdiction over the person of the defendant to be able to render a valid judgment against him.

STATEMENT OF THE CASE

On September 16, 1999, Michael C. Darnell, an attorney, filed a lawsuit in Civil District Court for the Parish of Orleans, seeking to disqualify Dwight “Twin” Al-corn as a candidate for the House of Representatives, District 100. Darnell alleged in his petition that Alcorn failed to live in the district for one year before he qualified for the primary election, as required by LSA-R.S. 18:492, and Louisiana Constitution art; Section. 4.
The case was allotted to Judge Ethel S. Julien, Division “N”. On September 20, 1999, a hearing was held and judgment was rendered in favor of Darnell | ^against Alcorn, disqualifying him as a candidate for the House of Representatives, District 100.
Alcorn filed a motion for new trial or, in the alternative a rehearing; the duty judge denied both motions in the absence of the trial court. Alcorn appeals, contending that the trial court erred in rendering judgment in favor of Darnell, disqualifying him' as a candidate for House of Representatives, District 1.00.
FACTS
Qualifying for office in the October, 1999 primary election closed at 5:00 p.m. Sep*718tember 9, 1999. Mr. Darnell’s suit was filed by facsimile transmission to the clerk of court’s office at 10:58 p.m. Thursday September 16, 1999. The petition in the record contains a hand written notation, “posted September 17, 1999” followed by a person’s name. The service instructions contained three alternatives: one was the address listed on defendant’s qualifying papers; another address was that shown on his driver’s license, the address where plaintiff contends defendant actually resides; and a third address. By order signed Friday September 17, 1999 a hearing was fixed for 9 am, Monday September 20,1999.
The Civil Sheriff was not able to effectuate service on the defendant at any address provided by plaintiff.
On September 20, 1999 the proceedings began with counsel for plaintiff advising the court that service had not been made on the defendant. Thereupon the court took a recess until 1 pm to permit counsel to serve the clerk of court as the statutorily appointed agent. Following the recess the proceedings resumed with the representative of the clerk of court, Mr. Brous-sard, present. Mr. Broussard acknowledged service of process on behalf of the clerk of court earlier that day. 13He was sworn to testify and produced and identified the qualifying form executed by the defendant containing an address on Wright Road and a telephone number. The form was identified as plaintiffs exhibit #1.
Subsequent to this testimony the court appointed Mr. Ferdinand Valteau as attorney for the absent defendant. The trial proceeded and the court heard from a representative of the Civil Sheriff regarding service attempts on the defendant. The plaintiff testified, establishing that he is a qualified voter in District 100, and that the address on defendant’s qualifying papers is near his home. He knew, through his children, who lived at that address and that the defendant did not live there. The final witness was a private investigator who testified that he observed a ear registered to the defendant at the service address outside District 100, but on 8 separate checks at varying times of day and night never observed a vehicle registered to the defendant at the address on his qualifying form. The remainder of plaintiffs case consisted of documents subpoenaed from the registrar of voters and his driver’s license record showing renewal at the address outside of the district within one year of qualifying for office.
The trial court granted plaintiff judgment sustaining the objection to candidacy.

DISCUSSION

On appeal, Alcorn contends that the trial court erred in awarding judgment in favor of Darnell, thereby disqualifying Alcorn’s candidacy. Alcorn argues that the ruling by the trial court violated his due process rights. Alcorn argues that the LSA-R.S. 18:1405, requires that he be served with a citation directing him to appear in Court at 10:00 a.m. on the fourth day after the suit has been filed. Alcorn | contends that the fourth day requirement denied him adequate time to receive sufficient notice and to be able to prepare an adequate defense against the lawsuit.
Alcorn further contends that the curator ad hoc appointed by the trial court was inadequate and ineffective counsel in defending his rights against the lawsuit. Al-corn argues that the curator failed to contact him regarding the lawsuit and had insufficient time to prepare an adequate defense on his behalf, depriving him of his right to due process.
In an election contest, the person objecting to the candidacy bears the burden of proving the candidate is disqualified. La.R.S. 18:492; Slocum v. DeWitt 374 So.2d 755 (La.App. 3rd Cir.1979), writ denied, 375 So.2d 1182 (La.1979); Mix v. Alexander, 318 So.2d 130 (La.App. 4th Cir. 1975); Charbonnet v. Hayes, 318 So.2d 917 (La.App. 4th Cir.1975), application denied, 320 So.2d 201 (La.1975). The laws governing the conduct of elections must be lib*719erally interpreted so as to promote rather than defeat candidacy. Rich v. Martin, 259 So.2d 113 (La.App. 1st Cir.1971). Any doubt as to qualifications of a candidate should be resolved in favor of permitting the candidate to run for public office. Slocum, 374 So.2d at 758.
In a lawsuit objecting to a candidacy on the ground the defendant was unqualified to be a candidate because of not having been actually domiciled in the district for one year preceding the time for qualification, the burden of proof is on the contestant. Autin v. Terrebonne, 612 So.2d 107; Blackwell v. Blackwell, 606 So.2d 1355. The question of domicile is one of intention as well as fact, and where it appears a domicile has been acquired in another district, the party seeking to show it has been changed to a new district must overcome the legal presumption it has not been changed by positive and satisfactory proof of the establishment |sof a domicile as a matter of fact with the intention of remaining in the new district and of abandoning the former domiciles. Succession of Caprito, 468 So.2d 561.
Domicile is an issue of fact to be determined on a casé-by-ease inquiry. Succession of Barnes, 490 So.2d. 630, 631 (La.App. 2nd Cir.1986); Eagle v. Eagle, 477 So.2d 1293, 1294 (La.App. 3rd Cir.1985); Calix v. Souza, 467 So.2d 1369, 1370 (La. App. 5th Cir.1985).
LSA-Const. Article 3, Section 4 requires that a candidate for the legislature must have been “actually domiciled for the preceding year” in the district from which he or she seeks election. The phrase “actually domiciled” as used in the constitution requires that one holding legislative office have a real rather than fictitious domicile in the area represented. Messer v. London, 438 So.2d 546, 547 (La.1983).
Residence and domicile are not synonymous, and a person can have several residences, but only one domicile. Messer v. London, supra at 547; Autin v. Terrebonne, 61 2 So.2d 107, 108 (La.App. 1st Cir.1992). A person may maintain more than one residence, and the fact that one is maintained for political purposes does not itself prevent residence from being actual and bona fide. Autin v. Terrebonne, supra at 108.
Domicile is defined in LSA-C.C. art. 38 as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the.manner hereafter prescribed, any one of said places where he resides may be considered as his principal establishment, at the option of persons whose interests are thereby affected.
| fiThe Louisiana Supreme Court has enunciated a two-part test for the reversal of a fact finder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong.
Maranto v. Goodyear Tire & Rubber Co., 94-2615 p. 7 (La. 2/20/95); 650 So.2d 757, 762; Theriot v. Lasseigne, 93-2661 p. 5 (La. 7/5/94); 640 So.2d 1305, 1310; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
After reviewing the record in its entirety, we find that the. trial court appointed Attorney Ferdinand Valteau as Curator Ad Hoc to represent the absent defendant, Dwight “Twin” Alcorn, upon whom service was not effected, toward the end of the hearing herein. We also find that the trial court recessed in order to allow Michael C. *720Darnell, plaintiff, to serve Edwin. Lombard, Clerk of Criminal District Court.
The record reflects that service was made upon Joseph Broussard, Deputy Clerk of Criminal District Court. The record also indicates that Dale Atkins, Clerk of Civil District Court, forwarded certified mail to Jerry Fowler, Commissioner of Elections, as well as Fox McKeithen, Secretary of State for Orleans' Parish. Further, the record indicates that service' was made on the Louisiana Department of Motor Vehicles. Service was also made on Bobby Wilson, Deputy Registrar of Voters for Orleans Parish. Certified copy was not mailed to Alcorn, and even if it had been mailed, this is inconsequential because Alcorn would not have even received it over the weekend.
^Additionally, service was made on Bruce Conrad, Deputy Supervisor for the Civil Sheriff for Orleans Parish. Service was also effected on Michael Darnell and Dwayne Lockett, a private investigator hired by plaintiff.
On September 20, 1999, hearing was held. The trial court ruled in favor of Michael Darnell thereby disqualifying Al-corn as a candidate for the Louisiana House of Representatives, District 100. Alcorn filed a Motion for' New Trial or Rehearing, which was subsequently denied by the duty judge in the absence of the trial judge who tried the case. It is from this judgment that Alcorn now appeals.
TESTIMONY AT TRIAL

Joseph Broussard

Joseph Broussard, Deputy Clerk of Criminal District Court, was the first to testify. Broussard testified regarding Al-corn’s • candidacy qualification forms. Broussard testified that' the address listed on these forms is 5740 Wright Road, and the phone number listed is 244-7185. Broussard further testified that the Haynes Directory lists two occupants at the 5740 Wright Road address, one of whom is Dwight Samuel Alcorn. Brous-sard testified that he was not an agent for service of process on the candidate but rather, he was at the hearing in his capacity as a representative of Edwin Lombard’s office. Following Broussard’s testimony, plaintiffs counsel entered into evidence the “Notice of Candidacy” of Dwight Alcorn, marking it “Exhibit 1”.

Bruce Conrad

Bruce Conrad, Deputy Supervisor of the Civil Sheriffs Office for Orleans Parish, testified. Conrad testified that service of the Petition to Disqualify Candidacy was attempted on Alcorn at the following addresses: 5740 Wright |8Road; 6917 Lake Kenilworth, Apt. 1035; and “an address on Sandalwood.” (sic). Conrad also testified that they received subpoenas for service of the Petition on the Department of Motor Vehicles and the Registrar of Voters.
Conrad testified that when service was attempted on the Sandalwood address, unidentified persons there said that “they knew him, but he didn’t live there.” Conrad testified that a deputy informed him that the deputy had previously served people at the Wright Road address and that their lást name was Delpit. Conrad testified that a third service was attempted at the Kenilworth address.
Conrad testified that he had deputies go to the Kenilworth address on Saturday, September 18, 1999, to no avail. Conrad testified that he went there himself on the morning of Monday, September 20, 1999 but was unsuccessful. In short, Conrad testified that no personal service was effected on Alcorn at any of these three addresses.
Plaintiffs counsel offered, filed and introduced into evidence “Exhibit 2”, a subpoena return from the Louisiana Voter’s Registration Office for the Parish of Orleans and voter registration for Dwight Samuel Alcorn, listing 5740 Wright Road, New Orleans, Louisiana 70128, as his address. Plaintiffs counsel noted for the record that Alcorn’s voter registration card contains biographical information *721about Alcorn. Plaintiffs counsel noted that Alcorn had a change of address on March 29, 1996. This new address was listed as 6917 Lake Kenilworth, Apt. 1036.1
Plaintiffs counsel then offered, filed and introduced into evidence “Exhibit 3”, Al-corn’s driver’s license. Plaintiffs counsel noted that the address listed on | ¡Alcorn’s license is 6917 Lake Kenilworth Drive, Apt. 1035.2 Plaintiffs counsel offered, filed and introduced into evidence “Exhibit 4”, the “Petition to Disqualify Candidacy” with attachments. After this,plaintiffs counsel requested' judicial notice of the Haynes Directory and marked it as “Exhibit 5.”

Michael Darnell

The plaintiff, Michael Darnell, was the next to testify. Darnell testified that he has lived in New Orleans East, District 100, since December of 1988. Darnell testified that the residents of 5740 Wright Road are “the Delpits.” When questioned as to his knowledge about this, Darnell testified that his son is a friend of the son of the Delpits. Darnell testified that, to his knowledge, the Delpits have lived there about five or six years. Plaintiffs counsel offered, filed and introduced into evidence “Exhibit 6” and “Exhibit 6A”, certified copies of Darnell’s voter registration records.

Dwayne Lockett

Dwayne Lockett, a private investigator hired by the plaintiff, testified at the hearing. Lockett testified that he was hired to investigate Dwight Alcorn. When questioned about the specifics of his investigation, Lockett provided the following testimony:
“From the very beginning I did several searches, one of which I ran what is considered to be a credit header search, where it simply gives the present address of someone and that information is usually based on what information was submitted in the credit report to the various credit agencies. Based on that, it provided me with an address, current address of the individual, and it provided me with a social security | innumber and driver’s license number....The credit header indicated that his current address of 6917 Lake Kenilworth, apartment 1035 in New Orleans under social security number 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....After I received a copy of his driver’s license, which also listed the 6917 Lake Kenil-worth Street apartment, I went to that location and during the course of my investigation I observed a lady putting up some signs in front of the apartment complex. The lady was driving a grayish color Mitsubishi vehicle, of which I obtained the license plate which number was EXL861, once obtaining the license plate I checked with the Department of Motor Vehicles and found that, that vehicle was also registered to Dwight Samuel Alcorn at 6917 ' Lake Kenilworth Street, apartment 1035.3”
On re-direct, Lockett testified that he observed this vehicle at the Kenilworth address on three separate occasions. Lockett further testified that he never observed Alcorn going in or out of the residence at any of these times. Lockett opined that in a situation where a vehicle is registered in a particular location and the driver’s license is registered in that same location, this is usually the residence of that individual.
After the submission of the case, the trial judge ruled that there was sufficient service to give jurisdiction over Alcorn. *722The trial judge further opined that the principal question before the court was “whether or not Alcorn’s domicile is at 6917 Lake Kenilworth Boulevard or another, 5740 Wright Road.”
After considering the evidence and testimony presented, the trial court concluded that Alcorn’s address was “6917 Lake Ken-ilworth Drive as opose (sic) to 5740 Wright Road.” The trial judge reasoned that the evidence indicated that Alcorn failed to meet his burden of proving that he was domiciled in District 100 for the preceding year of his qualifying for candidacy for the primary election for House of Representatives, District 100. On this basis, the trial judge disqualified In Alcorn as a candidate for the Louisiana House of Representatives, District 100. We disagree.
STATUTORY FRAMEWORK
La. R.S. 18:1401 A permits “a qualified elector” to bring an action objecting to the candidacy of a person who has qualified to run for an office in which the plaintiff is qualified to vote. The proper parties defendant in such a suit are the candidate objected to and the official before whom he qualified. La. R.S. 18:1402 A(l) and (2). Venue'lies in any parish included in the district from which the office is filled. La. R.S. 18:1404 A. The suit must be instituted within seven days after qualifying for office closes. La.R.S. 18:1405 A. The suit objecting to candidacy must be instituted by filing a petition in a court of competent jurisdiction and posting a copy of the petition in a conspicuous place at the entrance of the clerk of court’s office where the suit is filed. La.R.S. 18:1406 A. Pursuant to LSA-R.S. 18:1407, by filing á notice of candidacy, the candidate appoints the clerk of court for each parish in which he runs as his agent for service of process in any action objecting to his candidacy. If service of process is to be made on the statutorily provided agent, it is effected by serving citation on the agent. However, at the same time, a diligent effort must be made to personally serve the candidate at the address shown on his qualifying papers. LSA-R.S. 18:1408 A. Upon being served, the appointed agent shall immediately mail notice of the service along with the citation to the candidate at the address on his qualifying papers or at any other place the agent believes the candidate may be temporarily residing. LSA-R.S. 18:1408 B. Proof of mailing and return receipt card must be placed in the record. LSA-R.S. 18:1408 C. Service of process on and citation of the agent “together with the posting” shall be sufficient to confer | ^personal jurisdiction over the defendant. LSA-R.S. 18:1408 D. The suit is tried summarily to the court. The trial must begin no later than 10:00 a.m. on the fourth day following filing. If the defendant does not appear, the court, prior to trial, must appoint an attorney to represent him and the proceeding is conducted against him. LSA-R.S. 18:1409 A. The trial court must render judgment within 24 hours of submission of the case. LSA-R.S. 18:1409 C. Any aggrieved party must appeal within twenty-four hours after judgment is rendered. The return day may not exceed three days following rendition of the judgment. LSA-R.S. 18:1409 D. The appellate court must hear the case within 48 hours after the record is lodged and shall render its judgement within 24 hours following argument. LSA-R.S. 18:1409(7).
In the instant case, the initial inquiry is whether the trial court had personal jurisdiction over Alcorn. We find it is impossible to conclude that the court had personal jurisdiction over the defendant. The record is uncontradicted that Alcorn was not personally served by the Civil Sheriffs office. Further, the trial court acknowledged that its only basis for jurisdiction was service on Edwin Lombard, the Clerk of Criminal District Court for Orleans Parish. However, that service was only effected after the hearing began on September 20, 1999. The record is devoid of any evidence that the Clerk of Court took any steps ¡to comply with the *723provisions of LSA-R.S. 18:1408 B regarding notice to Alcorn by certified mail. Indeed, we opine that at that stage, it would have been a vain and useless act.
The essence of due process is notice and an opportunity to be heard. The Code of Civil Procedure requires that in order to obtain personal jurisdiction through service upon the agent, service upon him must be requested in sufficient 113time to permit the Clerk of Court to properly discharge his duty to mail the petition and citation to the defendant. By waiting to serve the Clerk of Court after the time set for the hearing to begin, the plaintiff deprived Alcorn of an effective agent for service of process. This effort was merely the appearance of notice with no substance and can be of no legal effect. We therefore opine that this is fatal to the court’s exercise of personal jurisdiction. Furthermore, posting of a notice of the lawsuit is insufficient notice without the requisite service on the agent of process.
In addition, we find that the trial court’s appointment of Ferdinand Valteau as curator ad hoc was flawed. When Al-corn did not appear at the hour appointed for hearing, the court was mandated by LSA-R.S. 18:1409 A to appoint an attorney. However, Attorney Valteau was not appointed until after the trial had begun and one witness had already testified and been discharged. Alcorn did not receive the minimal representation to which he was entitled under the statutory law.
An additional basis for our decision is found in one of the plaintiffs own exhibits. “Exhibit P-2” is Alcorn’s Louisiana Voter Registration Application. Al-corn’s address is listed as 5740 Wright Road, New Orleans, Louisiana 70128, and it is dated August 23, 1990.
On page 2 of the same exhibit, in the section entitled “Change of Address”,- Al-corn’s address is listed as 6917 Lake Kenil-worth Drive, Apt. 106. It is dated March 29, 1996. In this same section, Alcorn’s address is listed as 5740 Wright Road, New Orleans 70128. This is dated August 25,1999.
The third page of this same exhibit is entitled “Application for Transfer (Removal from Precinct to Precinct or Ward to Ward)”. This page indicates that |14Alcorn changed his registration from 5740 Wright Road, New Orleans, Louisiana, Ward 9, Precinct 44M to 6917 Lake Kenilworth Drive, Apt. 106, New Orleans, Louisiana 70126, Ward 9, Precinct 43A. This is dated March 29, 1996.
Page four of the same exhibit is also entitled “Application for Transfer.” It indicates that Alcorn applied for a change of registration from 6917 Lake Kenilworth Drive, 70126 to 5740 Wright Road, 70128. According to this page of the exhibit, Al-corn moved to the Wright Road address in January of 1998. This document is dated August 25, 1999.
In accordance with the jurisprudence and the applicable statutes, it is our learned opinion that Alcorn has lived at the 5740 Wright Road address since January of 1998, over one year before his qualifying for candidacy for the House of Representatives, District 100; therefore, Alcorn meets the requisites for candidacy pursuant to LSA-R.S. 18:493. The plaintiffs own exhibits so show and thus, he failed to meet his burden of proof. Thus, the trial court erred in disqualifying Al-corn’s candidacy.
Accordingly, we reverse the trial court’s decision and reinstate Alcorn’s candidacy for House of Representatives, District 100.

REVERSED AND ALCORN’S CANDIDACY RE-INSTATED.

BYRNES, J., dissents for reasons assigned by Judge LANDRIEU.
ARMSTRONG, J., dissents for the reasons assigned by Judge LANDRIEU.
MURRAY, J., dissents and assigns reasons.

. The record is devoid of any documentation filed by the plaintiff that shows that Alcorn's address on Lake Kenilworth Drive is either Apt. 1036 or 1035.

. The driver’s license lists Alcorn’s apartment number at 6917 Kenilworth Drive as "Apt. 105”.

.The registration shows the apartment at the 6917 Lake Kenilworth Drive address to be Apt. 105.