BRANDON LUMAR AND VERCELL FIFFIE

VERSUS

ATOUNDRA PIERRE LAWSON

NO. 20-CA-251

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 75,721, DIVISION "B"
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE PRESIDING

August 10, 2020

2020 AUG 10 AM 11:56
FILE FOR RECORD
DEPUTY CLERK
FIFTH CIRCUIT
COURT OF APPEAL
STATE OF LOUISIANA

**FREDERICKA HOMBERG WICKER
JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, Marc E. Johnson, Robert A. Chaisson, Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

**REVERSED**
 **FHW**
 **RAC**
 **SJW**
 **HJL**
 **JJM**

**CHEHARDY, C.J., DISSENTS WITH REASONS**
 **SMC**

**JOHNSON, J., CONCURS IN PART AND DISSENTS IN PART WITH
REASONS**
 **MEJ**

COUNSEL FOR PLAINTIFF/APPELLANT,
BRANDON LUMAR AND VERCELL FIFFIE
    Corey M. Oubre

COUNSEL FOR DEFENDANT/APPELLEE,
ATOUNDRA PIERRE LAWSON
    Stavros Panagoulopoulos

**WICKER, J.**

This appeal arises from a timely filed objection to the candidacy of Atoundra Pierre Lawson (Lawson) filed by petitioners, Brandon Lumar and Vercell Fiffie (Lumar/Fiffie), in the Fortieth Judicial District Court for St. John the Baptist Parish, case number 75,721, Division "B." This matter came on for hearing on July 31, 2020, before the Honorable Kirk A. Vaughn, Judge Pro Tempore of Division "B." After taking evidence and hearing argument of both parties, Judge Vaughn rendered judgment on July 31, 2020, at 3:45 p.m. in favor of Lawson and against Lumar/Fiffie dismissing the challenge to Lawson's candidacy for the election for district judge of Section 2, Division A, of the 40th Judicial District Court currently scheduled for November 3, 2020.[1] In that same judgment, the trial judge also issued a ruling dismissing the Clerk of Court for St. John the Baptist Parish and the Secretary of State.[2]

For the following reasons, we find this appeal and the appeal bond were timely filed, reverse the judgment of the trial court, and find that Lawson failed to legally qualify for candidacy in that she had not been domiciled in St. John Parish for the required one year period at the time she qualified, nor did she have a justifiable reason to believe that she had actually filed all required state and federal tax returns for the previous five years when she certified in her Notice of Candidacy that she had filed the necessary tax returns. Accordingly, Atoundra Pierre Lawson is disqualified as a candidate for district judge in the 40th Judicial District and it is directed that the Secretary of State of the State of Louisiana be served with a certified copy of this opinion and is ordered to remove Atoundra Pierre Lawson from the ballot of this election.

---

[1] While the judgment executed in this matter indicates that it was signed at 3:45 a.m., this court has determined that that was a typographical error, and that the judgment was actually signed at 3:45 p.m.
[2] At 10:30 a.m. on July 31, 2020, the trial court also signed a separate judgment dismissing the Louisiana Secretary of State R. Kyle Ardoin from this matter.

*Timeliness of Appeal and Bond*

Lawson argues that Lumar/Fiffie's appeal should be dismissed because appellants failed to post an appeal bond within 24 hours of the signing of the judgment pursuant to La. R.S. 18:1409(D), specifically, before noon on August 3, 2020.

On July 31, 2020, Lumar/Fiffie fax filed a Notice of Intention to Apply to the Court of Appeal, Fifth Circuit, requesting an appellate review of the decision rendered by Judge Vaughn on July 31, 2020. The original fax-filed document contained an order requesting that a return date be set. The order was not signed by a trial judge until August 3, 2020, at which time the return date was set for August 3, 2020. The order submitted to set the return date, fax-filed on July 31, 2020, did not contain a request to set a bond, and as such, no bond was set. On August 3, 2020, at 10:57 a.m., Lumar/Fiffie timely filed a Request for Bond Amount with the Clerk of the 40th Judicial District Court. Lumar/Fiffie also posted an amount of $1,960.00 as an anticipated bond. According to Lumar/Fiffie, at approximately 1:24 p.m. on August 3, 2020, the Honorable Judge Sterling Snowdy, on behalf of Judge Vaughn, set the bond at $5,000.00. Lumar/Fiffie posted the difference between the anticipatory bond and the set bond at 1:47 p.m.

According to La. R.S. 18:1409(D), within 24 hours after the rendition of the judgment, a party aggrieved by the judgment concerning an election may appeal by obtaining an order of appeal and giving bond for a sum fixed by the court to secure the payment of costs. The trial judge shall then fix the return day at a time not to exceed three days after the rendition of judgment. *Id*.

La. R.S. 18:1413 sets forth the computation of time under the "Procedure for Objections to Candidacy and Election Contests" section of the Louisiana Revised Statutes. La. R.S. 18:1413 states, "Computation of all time intervals in this

Chapter shall include Sundays and other legal holidays. However, *if the time interval ends on* a Sunday or *other legal holiday*, then noon of the next legal day shall be deemed to be the end of the time interval." (Emphasis added). As the judgment complained of was rendered on Friday, July 31, 2020, at 3:45 p.m., Lumar/Fiffie's 24-hour deadline to appeal and post bond would ordinarily be 3:45 p.m. on Saturday, August 1, 2020.

However, La. R.S. 1:55, entitled "Days of public rest, legal holidays, and half-holidays," states,

> A.  The following *shall* be days of public rest and legal holidays and half-holidays:

> (1) The following shall be days of public rest and legal holidays provided, however, that in the parish of Orleans, the city of Baton Rouge, in each of the parishes comprising the *second and sixth congressional districts*, except the parish of Ascension, and in each of the parishes comprising the fourteenth and thirty-first judicial districts of the state, *the whole of every Saturday shall be a legal holiday*… (Emphasis added).

In this matter, Petitioners filed their objection to Atoundra Pierre Lawson's candidacy in the 40th Judicial District Court, which is located in St. John the Baptist Parish. St. John the Baptist Parish comprises parts of the second and sixth congressional districts. As a result, the whole day of every Saturday is considered a legal holiday in that parish.[3]

Both parties agree that, because Lumar/Fiffie's time interval for perfecting their appeal ended on Saturday, August 1, 2020—a legal holiday—noon of the next legal day was appropriately deemed the end of the time interval. Thus, the

---

[3] Further supporting the position that Saturday is a legal holiday, La. R.S. 18:493, which is titled "Time for objecting to candidacy," provides, in pertinent part,
> An action objecting to candidacy shall be commenced in a court of qualifications for candidates in the primary election. However, if the time interval ends on a *Saturday*, Sunday, or other legal holiday, then noon of the next day which is not a *Saturday*, Sunday, or legal holiday shall be deemed to be the end of the time interval. (Emphasis added).

Clearly, the legislature would not have intended Saturday to be a legal holiday for La. R.S. 18:493, but not consider it to be a legal holiday under La. R.S. 18:1413.

end of the time interval for Lumar/Fiffie to perfect their appeal was noon on Monday, August 3, 2020. *See also Walker v. Rinicker*, 29,361 (La. App. 2 Cir. 9/6/96), 681 So.2d 1, 3 (finding that appellants in an election suit had until noon on Tuesday, September 3, 1996, to perfect an appeal from a Friday, August 30, 1996 judgment because Saturday, Sunday, and Monday (Labor Day) were all legal holidays pursuant to La. R.S. 1:55(3)). Nevertheless, Lawson argues that Lumar/Fiffie failed to timely perfect their appeal within the statutory period because they did not post the total bond amount set by Judge Snowdy until Monday, August 3rd at 1:47 p.m.

Pursuant to La. R.S. 18:1409(D), the trial court fixes the sum of the bond required to perfect an appeal. Lumar/ Fiffie timely filed a request for bond amount at 10:57 a.m. on August 3, 2020, which, according to appellants, was not addressed by the judge until 1:24 p.m. Lumar/Fiffie requested that a bond amount be set before the deadline for perfecting the appeal. Furthermore, Lumar/Fiffie posted a bond and paid the court reporter fee before the deadline, even though the amount was less than that eventually set by the trial court.[4] Finally, Lumar/Fiffie paid the additional bond amount within 30 minutes of the time the trial court set the bond. *See Brown v. Brown*, 618 So.2d 451, 452 (La. App. 5 Cir. 1993) (when the "reasons for failure to pay costs timely are not imputable to the appellant," dismissal is not warranted). Under these circumstances, we find that the request for an appeal bond and the payment of the appeal bond on Monday, August 3, 2020, were timely.

---

[4] La. R.S. 18:1409(D) states that the court is to fix the bond amount "to secure the payment of costs." The $1,960 bond and $1,200 payment for the court reporter posted by appellants was sufficient to cover the costs of this appeal. *See Bradford v. Johnson*, 94-1703 (La. App. 1 Cir. 8/19/94), 641 So.2d 222, *writ denied*, 94-2186 (La. 8/23/94), 659 So.2d 495 (motion to dismiss appeal for failure to timely post bond was denied when appellant paid costs of appeal in full within time allowed for perfecting appeal).

## DISCUSSION

On July 29, 2020, Lumar/Fiffie timely filed a petition pursuant to La. R.S. 18:492[5] alleging that Lawson was not qualified for election to the district court seat on the basis that she had not been domiciled in the 40th Judicial District for the one year preceding the election, pursuant to Louisiana Constitution Article 5, Section 24, and had falsely certified on her Notice of Candidacy that she had filed her federal and state income tax returns for the previous five years. The trial court ruled in favor of Lawson, finding that Lumar/Fiffie did not meet the burden of proof establishing that Lawson was unqualified.

To further the policy of providing the electorate with the widest possible choice of candidates, a person challenging candidacy has the burden of proving that the candidate is disqualified. *Landiak v. Richmond,* 05-0758 (La. 3/24/05), 899 So.2d 535, 541 (citing *Becker v. Dean,* 03-2493 (La. 9/18/03), 854 So.2d 864, 869). However, once an objector makes a *prima facie* showing that the grounds for disqualification exist, the burden shifts to the candidate to rebut the showing. *Labat v. Price-Bedi*, 19-404 (La. App. 5 Cir. 8/23/19), 279 So.3d 482, 484-85 (citing Landiak, 899 So.2d at 541-42), *writ not considered*, 19-1382 (La. 8/28/19), 277 So.3d 1185.

---

[5] La. R.S. 18:492 states, in pertinent part,

A. An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on one or more of the following grounds:
(1) The defendant failed to qualify for the primary election in the manner prescribed by law.
. . .
(3) The defendant does not meet the qualifications for the office he seeks in the primary election.
(4) The defendant is prohibited by law from becoming a candidate for one or more of the offices for which he qualified.
. . .
(7) The defendant falsely certified on his Notice of Candidacy that for each of the previous five tax years he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both as provided in R.S. 18:463(A)(2), or was not required to file either a federal or state income tax return or both.

Appellate courts review a trial court's findings of fact under the manifest error or clearly wrong standard. *North v. Doucet*, 18-437 (La. App. 5 Cir. 8/1/18), 253 So.3d 815, 818, *writ denied*, 18-1294 (La. 8/3/18), 249 So.3d 829. When evaluating issues of law, an appellate court asks whether the court's interpretative decision is legally correct. *Id.* (citing *Nixon v. Hughes*, 15-1036 (La. App. 4 Cir. 9/29/15), 176 So.3d 1135, 1137). When the trial court's decision is "based on an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." *Id.*

### *Tax Return Certification*

The manner for qualifying for an election is set forth in Louisiana Revised Statute 18:461(A)(1), which provides, in pertinent part, "[a] person who desires to become a candidate in a primary election shall qualify as a candidate by timely filing notice of his candidacy…". Louisiana Revised Statute 18:463 further provides, in pertinent part,

> A. (1)(a) A Notice of Candidacy shall be in writing and shall state the candidate's name, the office he seeks, the address of his domicile, and the parish, ward, and precinct where he is registered to vote.
> . . .
>
> (2)(a) The Notice of Candidacy also shall include a certificate, signed by the candidate, certifying all of the following:
>
> (i)    That he has read the notice of his candidacy.
>
> (ii)   That he meets the qualifications of the office for which he is qualifying.
> . . .
>
> (iv) Except for a candidate for United States senator or representative in congress, that for each of the previous five tax years, he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.
> . . .
>
>  (ix) That all of the statements contained in it are true and correct.

On July 22, 2020, at approximately 8:30 a.m., Lawson executed a notarized Notice of Candidacy form, which included the following certification as required by La. R.S. 18:463(A)(2)(a)(iv):

> If I am a candidate for any office other than United States senator or representative in congress, that for each of the previous five tax years, I have filed my federal and state income tax returns, have filed for an extension of time for filing either my federal or state income tax return or both, or was not required to file either a federal or state income tax return or both.

At the July 31, 2020 hearing to determine Lawson's qualifications, Mr. Fiffie testified to making a public record request to the Louisiana Department of Revenue (LDR) regarding Lawson's tax filing status. The response, dated July 29, 2020, indicated that "Atoundra Pierre Lawson is not registered with the Louisiana Department of Revenue." A representative from the LDR testified that "register" is a term of art and that individuals do not "register" with the LDR. Rather, when an individual files a tax return with the State under their social security number, it automatically creates an account with the LDR. The term "register" refers to the account created. If an individual has never filed a Louisiana tax return with the Louisiana Department of Revenue that individual is not "registered."

Lawson testified that on or around July 17, 2020, she hired a tax preparer to prepare her federal tax returns for the 2015, 2016, 2017, 2018 and 2019 tax years as well as the state tax returns for those years that she owed to Virginia and a 2019 Louisiana State return. She signed all of the returns on July 17, 2020, and testified that on July 20, 2020, around 10:00 p.m., she placed them in an outgoing United States Post Office Box in Kenner, Louisiana. Lawson introduced a receipt for one First-Class® mailing envelope to an address in Kansas City, Missouri, which she

claimed would have been one of the federal tax returns, and another receipt for

$16.50 worth of postage stamps used to mail the rest of the returns.[6]

At the time of the July 31, 2020 hearing, Lawson testified that she had

received no documentation or confirmation that her returns had been received by

the IRS or the relevant state agencies.  However, the LDR representative testified

that, as of the date of the hearing, LDR's system reflected that a return had been

received in Lawson's name for the 2019 tax year.  The representative was unable

to testify as to when that return had been received.  Nevertheless, based upon

LDR's July 29, 2020 response to Mr. Fiffie's public records act request, LDR had

no record of Lawson's 2019 Louisiana tax return on that date, seven days after

Lawson certified that she had filed her state and federal tax returns.  Lawson

produced no evidence that either the federal or Virginia tax returns had been

received by the relevant agencies.

Lawson maintained that on July 22, 2020, she truthfully certified under oath

that she had filed all of the required tax returns at the time of signing her Notice of

Candidacy based on her understanding that "filing pursuant to the Code of Federal

Regulations means inserting it to the United States Postal Service mail."

La. R.S. 18:492(A) states:

> An action objecting to the candidacy of a person who qualified
> as a candidate in a primary election shall be based on one or more of
> the following grounds:
>
> (7) The defendant falsely certified on his Notice of Candidacy
> that for each of the previous five tax years he has filed his federal and
> state income tax returns, has filed for an extension of time for filing
> either his federal or state income tax return or both as provided in R.S.
> 18:463(A)(2), or was not required to file either a federal or state
> income tax return or both.[7]

---

[6] The receipt for the $1.00 purchase of the large regular mailing envelop weighing 0.60 ounces indicated that the estimated delivery date to the Kansas City, Missouri address was July 25, 2020.

[7] With the addition of this mandatory, affirmative certification regarding tax returns in the Notice of Candidacy, under penalty of disqualification for a false certification, the Legislature has effectively, by statute, expanded the qualifications necessary to run for office beyond those required by our State constitution, apparently on the questionable premise that it is merely a procedural requirement for qualifying.  However, because neither party has raised this issue, nor briefed it, we decline to discuss it further in this opinion.

The plain language of La. R.S. 18:492, does not purport to disqualify a candidate for the actual failure to file the required tax returns, or for the failure to file them regularly and in a timely manner, but rather provides for disqualification for the false certification in the Notice of Candidacy that the required tax returns have been filed. Because the ground for disqualification as it pertains to tax returns is the falsity of the candidate's certification on his Notice of Candidacy, and because the Louisiana Administrative Code's "postmark" rule allows for a retroactive "filing" date for tax returns, courts in our state have been faced with election challenge suits, like the one before us, where a challenged candidate has filed her Notice of Candidacy with a certification that she has filed her required tax returns, *after* she has belatedly attempted to file past due tax returns by mailing them, but *before* actual physical receipt of those returns by the intended recipient entity. In these cases, courts are faced with examining the factual circumstances surrounding the mailing of the returns to determine whether the candidate's certification of the "filing" of those returns is truthful.

As stated above, the certification in the Notice of Candidacy does not require the candidate to certify that the past five years of tax returns were ***timely*** filed, only that they were filed before the Notice of Candidacy was executed. However, what constitutes a "filed" return is a legal definition. Rather than look to applicable sources of law to determine whether Lawson's statement—that she had filed her returns before qualifying for candidacy—was true and accurate in accordance with 26 U.S.C. § 7502, Virginia 23 VAC 10-20-30, and La. R.S. 18:463(A)(2)(a)(ix), the trial judge relied on his personal knowledge and experience as well as the testimony of Lawson's tax preparer, whom the court qualified as an expert to

answer the question, "when are the tax returns considered filed?"[8]  We find that the

trial judge erred as a matter of law when he failed to consider *Russo v. Burns*, and

the relevant laws of the jurisdictions wherein Lawson was required to file returns

regarding when a tax return is considered filed.  14-1963 (La. 9/24/14), 147 So.3d

1111.  Therefore, we review the record *de novo* beginning with a discussion of the

law regarding filing tax returns.

Federal law incorporates a postmark exception to the general rule that a tax

return is filed when physically delivered to the correct entity for filing.  *Compare*

*Phinney v. Bank of the Southwest National Assn., Houston*, 335 F.2d 266, 268 (5th

Cir. 1964) ("physical delivery rule" states the general requirement for filing

claims), *and Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986) (26 U.S.C.

§ 7502 explicitly provided two statutory exceptions to the physical delivery rule

for the filing of tax claims and returns).

Title 26 of the United States Code, Section 7502(a)(1) provides,

"if any return . . . required to be filed . . . within a prescribed period
or on or before a prescribed date . . . is, after such period or such date,
delivered by United States mail to the agency . . . with which such

---

[8] After the witness testified that she had started out preparing tax returns for herself and family members
and then registered with the IRS to prepare taxes for compensation for the past 20 years—which does not
require a license, degree, or any level of specialized training, education, or testing—Lumar/Fiffie objected
to her giving expert testimony regarding legal filing of returns.  The trial judge admitted her over the
objection because, "she is not going to be expressing a legal opinion, so I am not concerned with that."
The judge continued,

"I think everybody in here can tell you what you have to do to file a tax return by mail if
they've ever paid their taxes.  And I kind of made that joke earlier.  I mentioned it earlier
when I said it was evident at the Post Office on the 15th of April or May, kind of knows
what that rule requires.  So with that said, proceed."

Thereafter, the tax preparer went on to state, "a tax return is—in my opinion, from my experience, is filed
when it is. . . mailed."  Although she could state no source for her knowledge, the expert assured
Lumar/Fiffie's counsel that tax returns are considered filed even if they were lost in the mail and "[e]ven
if the Department of Revenue, whether it be the Federal or State Departments of Revenue, never received
the document" as long as the returns were placed in the mail."

return is required to be filed, . . . the date of the United States postmark stamped on the cover in which such return . . . is mailed shall be deemed to be the date of delivery."

This rule only applies if the return is (A) postmarked within the prescribed time period or before the prescribed date for filing (including any extension granted) of the return, and (B) deposited in the United States mail in a properly addressed envelope with prepaid postage. 26 U.S.C. § 7502(a)(2).

The United States Sixth Circuit Court of Appeals interpreted the exceptions contained in Section 7502 as follows,

> The section provides that if any document which must be filed within a prescribed period and which is after that period "delivered by United States mail" to the office where it is to be filed, the date of the U.S. postmark stamped on the envelope "shall be deemed to be the date of delivery...." Section 7502(a)(1). This "mailbox rule," both by its terms and as revealed in the legislative history, applies only in cases where the document is actually received by the I.R.S. after the statutory period. The second exception set out in section 7502 provides that if a document is sent by registered mail, such registration shall be *prima facie* evidence that the document was delivered to the office to which it was addressed, and that in that case the postmark shall be deemed the date of delivery. Section 7502(c)(1).

*Miller*, 784 F.2d at 730 (internal citations omitted). Therefore, a taxpayer may only benefit from the postmark exception if the returns were timely mailed and postmarked before the expiration of the period for filing when the returns are delivered after the period expires. The physical delivery rule applies to all other filings. The second exception ensures that a taxpayer who properly utilized either registered or certified mail or a private delivery service (methods of mailing with delivery confirmation) has *prima facie* proof that the returns were delivered to the appropriate authority, in the event that the agency disputes actual delivery.

However,

> [o]ther than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated PDS as provided for by paragraph (e)(2)(ii) of this section, are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the

20-CA-251                                  11

document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

26 C.F.R. § 301.7502-1(e)(2)(i). Therefore, Lawson could not accurately and with a justifiable reason to believe her five years of federal tax returns had actually been filed, so certify to that fact on July 22, 2020, at 8:30 a.m. She admittedly filed each of her federal returns after the filing deadline without an extension and had no evidence that the returns had been received. The federal mailbox rule does not apply to Lawson's filings.

It also appears that Lawson could not accurately certify that she filed her prior years' tax returns in the State of Virginia. Virginia 23 VAC 10-20-30 sets forth in pertinent part:

A. Generally.

1. When remittance of a tax return or a tax payment is made by mail, receipt of the return or payment by the person with whom the return is required to be filed or the payment is required to be made shall constitute timely filing or payment, provided that (a) the tax return or tax payment is received in a sealed envelope with sufficient postage; and (b) the envelope bears a postmark on or before midnight of the day the return is required to be filed or the payment be made without penalty or interest.

2. Returns mailed with insufficient postage shall not be deemed filed until actually received or remailed with adequate postage.

Because Lawson's tax returns for Virginia were filed late, whether or not the tax returns Lawson mailed were considered filed depends on whether the returns were sent with sufficient postage for actual delivery. Lawson gave no testimony that she had taken steps to ensure that adequate postage was placed on each of her Virginia returns. Her testimony was that she bought the stamps from a machine and that the post office was closed. Therefore, as she did not know that she had placed adequate postage on the five Virginia returns, and failed to assure delivery by mailing the returns by certified mail with a return receipt, or through a properly

sanctioned private postal service she had no basis of knowledge for a justifiable reason to believe that her Virginia returns had been filed.

Lumar/Fiffie argue that the Louisiana Department of Revenue's rules on filing State returns matches the Federal rule. Therefore, appellants argue that, since Lawson's returns were all past-due before she attempted to mail them,[9] she could not benefit from the postmark or mailbox rule, and her returns could not have been considered filed before she executed her Notice of Candidacy on July 22, 2020—having been placed in the mailbox after the post office had closed on July 20, 2020—rendering her certification necessarily false.

Louisiana Administrative Code Title 61, Part 1, § 4911 states:

1. Delivery by the United States Postal Service. A return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is ***deemed filed*** on the date postmarked by the United States Postal Service. The postmark must bear a date on or before the last date prescribed for filing the return, report or other document in order to be considered ***timely filed***. If the postmark on the envelope is not legible, the taxpayer has the burden of proving the date that the postmark was made. If the return, report or other document is sent by United States registered or certified mail, the date of registration is treated as the date of postmark. A postage meter date is considered a valid postmark date provided it does not conflict with a legible United States Postal Service postmark date. If the dates conflict, the United States Postal Service date shall override the meter date. (Emphasis supplied).

The first sentence of §4911 states that "a return, report or other document in a properly addressed envelope with sufficient postage delivered by the United States Postal Service is deemed filed on the date postmarked by the United States Postal Service." Lumar/Fiffie contend that the second sentence of the regulation, stating that "[t]he postmark must bear a date on or before the last date prescribed for filing the return, report or other document *in order to be considered timely filed*"

---

[9] Most of the returns were years late, and the applicable deadlines for filing 2019 returns were July 15, 2020 (federal) and July 17, 2020 (Louisiana). Lawson testified that she did not mail any of her returns until July 20, 2020.

(emphasis added), requires that a return be mailed by its prescribed due date for the "postmark" rule to control the date of filing. Essentially, Lumar/Fiffie argue that the second sentence negates the first sentence of the regulation for returns that are already untimely when mailed. We disagree with the Lumar/Fiffie's interpretation of §4911.

Pursuant to the clear and unambiguous language of this regulation, a return that is untimely when it is mailed remains *untimely* for tax purposes regardless of the "postmark" rule; however, under the unambiguous language of the first sentence, the date of the postmark is still considered the date of filing of that return.[10] Therefore, we conclude that, at least in Louisiana, the "postmark" rule remains applicable to a return that is mailed after the last date prescribed for its filing. However, it does not follow that Lawson's certification was true and accurate on the day she executed her Notice of Candidacy.

*Russo v. Burns*, 147 So.3d 1111, involved an election challenge on the ground that the candidate, Mr. Burns, had purportedly falsely certified on his August 20, 2014 Notice of Candidacy that he had filed his tax returns for the years 2010, 2011, 2012, and 2013. At trial, the plaintiff, Mr. Russo, introduced correspondence to and from the LDR wherein the LDR stated it had no tax returns on file for Mr. Burns for the years 2010 through 2013. A representative for the LDR also testified at trial that she was unable to locate any tax returns filed by Mr. Burns since 2009. Mr. Burns testified that he hired a tax preparer to file his tax returns for him in early August of 2014. The tax preparer testified that the returns were mailed, but not sent via certified mail. A United States Postal Service "Certificate of Mailing" dated August 15, 2014, was admitted into evidence, and

---

[10] Contrary to plaintiffs' arguments, whether Lawson's tax returns were timely filed *for tax purposes* is irrelevant to our analysis, as La. R.S. 18:463(A)(2)(a)(iv) does not require a candidate to certify that she has filed *timely* tax returns, only that she has *filed* tax returns for the previous five years.

the tax preparer testified that she kept the certificate to document the tax returns had been mailed.

The trial court found that Mr. Burns had presented sufficient evidence to rebut the *prima facie* case established by Mr. Russo. The Fourth Circuit Court of Appeal affirmed the trial court's judgment. The Louisiana Supreme Court reversed this decision, citing the "unambiguous language regarding filing provided by the LDR's regulations," in particular Louisiana Administrative Code Title 61, Part 1, §4911. In reaching its conclusion to disqualify Mr. Burns, the Supreme Court stated, "Without sending the returns *via certified mail* or otherwise ensuring their **delivery** to LDR, [the candidate] could not have known whether or not his tax returns had been **filed** pursuant to Louisiana regulation when he signed his Notice of Candidacy." *Id*. at 1114 (emphasis in original; italics added).

We find that the holding in *Russo* applies in this case. Lumar/Fiffie presented *prima facie* proof that Lawson was not qualified to run when they introduced correspondence from the LDR showing that, as of July 29, 2020, tax returns for Lawson could not be found in the LDR's system. Further, Lumar/Fiffie called Lawson on cross-examination during which she testified to placing the Louisiana tax return in an envelope and mailing it by regular mail rather than by certified mail with a return receipt, and further that she had no way to track the package.

The burden then fell to Lawson to rebut appellants' *prima facie* case. Lawson testified that she placed the tax returns in the mailbox at the U.S. Post Office in Kenner, Louisiana after 10:00 p.m. on July 20, 2020. She introduced a receipt for one large First-Class envelope to be sent to a Kansas City, Missouri address and another receipt for Forever stamps for $16.50. She testified that she did not send the tax returns certified mail or registered mail and, therefore, could produce no evidence that any of the returns had been delivered to the proper

authorities.  The *Russo* court found, "*without sending the returns via certified mail or otherwise ensuring their* **delivery** *to LDR, Burns could not have known whether or not his tax returns had been* **filed** *pursuant to Louisiana regulation when he signed his Notice of Candidacy*" 147 So.2d at 1114 (emphasis in original; italics added).  Likewise, Lawson could have reasonably known of delivery on the date she executed her Notice of Candidacy (even if delivery would occur post-certification) if she had sent her returns by certified mail.

Additionally, Louisiana Administrative Code Title 61, Part 1, § 4911 requires that the return be mailed in a properly addressed envelope with sufficient postage.  Lawson testified that she mailed the returns after the post office was closed and produced a receipt for stamps used to mail the returns.  Lawson presented no evidence or testimony regarding the steps she took to ensure that she placed the returns in the mail with adequate postage to reach their destinations.

Furthermore, although the LDR representative testified that there was a record of Lawson's 2019 tax return as of the July 31, 2020 hearing, the subsequent actual delivery of the return does not affect the knowledge that Lawson possessed on the date of her certification.  While actual delivery is required under both the federal and the Louisiana rule for the postmark rule to establish the filing date for tax purposes, it does not follow that the candidate must prove actual delivery of the return to be able to rely on the postmark rule for purposes of her certification in her Notice of Candidacy that the returns have been filed.  *See Russo*, 147 So.3d at 1114 ("returns which have not been **delivered** to LDR by the United States Postal Service have not been **filed** pursuant to this clear language [of §4911].") (emphasis in original).  What is required is objective evidence establishing that, at the time the candidate certified to having filed all tax filings or extensions, the candidate's sworn belief in subsequent delivery was justified.  *See Smith v. Charbonnet*, 17-0634 (La. App. 4 Cir. 8/2/17), 224 So.3d 1055, 1057–58, *writ denied*, 17-1364 (La.

8/7/17), 222 So.3d 722 (candidate introduced evidence that LDR received his return four days after he executed his Notice of Candidacy, however, he had no evidence that his return was delivered or received prior to certifying other than the statement that his wife had mailed them).

In *Russo*, Mr. Burns, who was attempting to rely upon the "postmark" rule, produced no evidence of subsequent actual delivery of his returns to the LDR. If the Supreme Court required such proof, it would have ended its analysis by indicating that Mr. Burns failed to prove actual delivery to the LDR. Instead, the Supreme Court stated that "*without sending the returns via certified mail* or otherwise ensuring their **delivery** to LDR, Burns *could not have known* whether or not his tax returns had been **filed** pursuant to Louisiana regulation when he signed his Notice of Candidacy." 147 So.2d at 1114 (emphasis in original; italics added). The Supreme Court, in disqualifying Mr. Burns for making a false certification, considered what Mr. Burns could have known, or "could not have known," at the time he made his certification, based upon the circumstances surrounding the mailing (*e.g.*, whether the returns were mailed by certified mail).

Our interpretation of the Supreme Court's ruling in *Russo* is that the challenged candidate is not required to prove actual delivery to the LDR, but that the challenged candidate must show reliable circumstances of mailing (*e.g.*, by certified mail), that would tend to ensure delivery, to maintain a justified reasonable belief that her returns have been filed as of the date of her certification to that effect in her Notice of Candidacy.

In other words, once a plaintiff makes a *prima facie* case for disqualification and the burden of proof shifts to the challenged candidate, the challenged candidate cannot carry her burden by simply professing a purely subjective, self-serving and unsupported "belief" that her returns have been filed. To the contrary, the challenged candidate must produce objective supporting evidence regarding the

circumstances of mailing (*e.g.*, proof of mailing by certified mail) to render her belief regarding filing a *reasonable* belief.  In this case, Lawson lacked objective evidence supporting her belief regarding the filing of her tax returns.

Without sending her tax returns via certified mail or otherwise ensuring their delivery to the Louisiana Department of Revenue, Mrs. Pierre Lawson was unable to verify whether her tax returns had been timely filed pursuant to Louisiana regulation at the time when signed her Notice of Candidacy.  Therefore, the trial court erred in declaring Lawson qualified for candidacy on these grounds.

Since Lawson did not mail her three sets of tax returns by certified mail or some other means to guaranty receipt, could not track the returns, gave no evidence that she knew she had placed sufficient postage on the envelopes, and received no evidence whatsoever that the Virginia State and Federal returns were ever received she had no justifiably reasonable basis for her hope that she had successfully filed her three sets of tax returns by placing them in the U.S. mail. Therefore, on July 22, 2020 when she certified in her Notice of Candidacy that she had filed all necessary tax returns for the previous five years she had no justifiably reasonable basis for that belief.  Her candidacy on that account fails.

### *Domicile Requirement*

To qualify for candidacy in the election for Section 2, Division A, of the 40th Judicial District Court, Lawson also was required to certify under oath that she met the qualifications of the office. La. R.S. 18:463(A)(2)(a)(ii); La. R.S. 18:492(A)(3). Pursuant to the Louisiana Constitution, Article 5, Section 24, a judicial candidate "shall have been *domiciled* in the respective district, circuit, or parish for one year preceding election."  Furthermore, La. R.S. 18:451 requires that when "the qualifications for an office include a residency or domicile requirement, a

candidate ***shall*** meet the established length of residency or domicile as of the date of qualifying."

The question before us is whether Judge Vaughn was manifestly erroneous when he found that Lumor/Fiffie failed to prove by a preponderance of the evidence that Lawson was not domiciled in her electoral district for one year at the time she qualified for office on July 22, 2020.

An individual's domicile is defined as his or her habitual residence. La. C.C. art. 38. While it is possible to have several residences, an individual only has one domicile, La. C.C. art. 39; *Becker*, 854 So.2d at 871, which makes domicile an issue of fact to be determined on a case-by-case basis. *Darnell v. Alcorn,* 99-2405 (La. App. 4 Cir. 9/24/99), 757 So.2d 716, 719, *writ denied,* 99-2795 (La. 9/28/99), 747 So.2d 1130. Domicile consists of two elements, residence and intent to remain. *Becker*, 854 So.2d at 871.

Every person has a domicile of origin that he retains until he acquires another. La. C.C. art. 44; *Davis v. Glen Eagle Ship Management Corp.,* 97-0878 (La. App. 4 Cir. 8/27/97), 700 So.2d 228, 230; *LaFleur v. Seaboard Fire & Marine Insurance Co.,* 296 So.2d 860 (La. App. 3 Cir. 1974), *writ refused,* 300 So.2d 185 (La. 1974). An individual changes his domicile when he moves his residence with the intent to make the new location his habitual residence. La. C.C. art 44.

In an election contest, the person opposing the candidacy bears the burden of proving the candidate is disqualified. La. R.S. 18:492; *Becker* 854 So.2d at 869. Thus, where a particular domicile is required for candidacy, the burden of proof rests upon the party objecting to the candidacy to show a lack of domicile. *Id.*

Because domicile requires a physical residence plus the intent to habitually reside at a certain location, a party's uncontroverted testimony regarding his intent

"may be sufficient to establish domicile, in the absence of any documentary or other objective evidence to the contrary." *Landiak,* 899 So.2d at 543. However, there is a legal presumption against a change of domicile such that a party seeking to show that domicile has been changed must present "positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." *Becker,* 854 So.2d at 871; *Russell v. Goldsby,* 00-2595 (La. 9/22/00), 780 So.2d 1048, 1051. Proof of the intent to change one's domicile depends on the circumstances, including whether a person has recorded a sworn declaration of intent to change domiciles. La. C.C. art. 45.

The Louisiana Supreme Court explained in *Landiak,*

> It is not enough to say, "I want to be a candidate for a given public office. I know I must be domiciled in the district applicable to the seat I seek for two years prior to the election. I therefore swear that I have been domiciled at a given residence within the district for two full years preceding the scheduled election for that office. Therefore, I am qualified for the office. End of inquiry." No, the candidate may have an additional burden, for once a qualified elector challenges that person's qualifications by producing sufficient evidence to support a contrary conclusion regarding the candidate's domicile, the burden shifts to the candidate to prove otherwise.

899 So.2d at 538. Therefore—because "[t]he expressed intent of the party may be at variance with the intent as evidenced by conduct, *Laborde v. Louisiana Insurance Guaranty Association,* 95-1122, (La. App. 3 Cir. 3/6/96), 670 So.2d 614, 617 (quoting *In re Kennedy,* 357 So.2d 905, 909 (La. App. 2 Cir.1978))— determining a party's intent to change domicile depends on the actual state of the facts, not what the party declares the facts to be. *See, e.g.*, *Davis*, 700 So.2d at 230.

While Lumar/Fiffie initially had the burden of presenting *prima facie* evidence challenging Lawson's qualifications, Lumar/Fiffie met that burden by presenting evidence that Lawson's previous domicile was in Virginia in a home in

which she, along with her husband and three sons, had lived for ten years and on which she had a mortgage of over $350,000.00, and that she moved to Louisiana barely a year before qualifying for this election, while continuing to maintain the home, family, and business in Virginia. Thereafter, the burden shifted to Lawson to prove that her domicile had changed.

The party seeking to establish a change in domicile bears the burden of proving that change. So long as a reasonable doubt remains, the presumption is that the domicile has not been changed. *Succession of Thompson v. Harrington*, 502 So.2d 229 (La. App. 3 Cir.1987); *Succession of Barger*, 217 So.2d 779 (La. App. 4 Cir. 1969); *Succession of Lauricella*, 571 So.2d 885 (La. App. 5 Cir. 1990). Some types of documentary evidence commonly considered by courts to determine domicile include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. The more of these items presented by a party opposing candidacy in a given case to show lack of domicile in the district, the more difficult it will be for the candidate to overcome the plaintiff's evidence. *Landiak*, 899 So.2d at 543-44 (footnotes omitted); *Graham v. Prevost*, 15-1033 (La. App. 4 Cir. 9/29/15), 176 So.3d 1142, 1145.

Both Lawson and her brother testified at trial that the address listed as Lawson's domicile on her Notice of Candidacy, in Edgard, Louisiana was the address that Lawson had been planning to return to for several years, it had always been home and was the house in which her aging father lived. Toward the end of June or the beginning of July of 2019, Lawson returned to Edgard to take care of her father who had had a serious accident, couldn't drive, and lived alone. She testified that she currently leases an apartment adjacent to her father's house for $200.00 per month and pays the cable bill, but she did not introduce the long-term

lease or any evidence of payments for the rent, or cable bill, and gave no testimony or evidence that she paid other utility bills. Lawson co-owns a home in Woodbridge, Virginia where her husband and three sons currently reside. She produced no evidence that she owned real estate in Louisiana nor of claiming a homestead exemption here. Two of Lawson's sons, one age 10 and the other age 14, are attending Virginia schools. When asked at the hearing, Lawson expressed no intention of divorcing her husband, nor has he filed for divorce. She testified that, in September of 2019, she sent her two sons back to Virginia from Louisiana to live with her husband and go to school. On June 8, 2019, Lawson filed articles of organization for United Parity Consulting, LLC in Virginia, listing herself as the registered agent of the business and a resident of Virginia. Since residing in Louisiana, although Lawson testified that she has clients in Louisiana, she did not register the company with the State of Louisiana nor produce evidence of Louisiana clients other than her brother. She has added a Louisiana address to the company website, but it is an address on St. Roch Avenue, New Orleans, not Edgard, Louisiana. Furthermore, although she returned to Louisiana in June of 2019, she did not return to active status as an attorney with the Louisiana State Bar Association until March of 2020. Finally, Lawson listed her Woodbridge, Virginia address on every one of the eleven tax returns she signed on July 17, 2020 and mailed to the three taxing authorities while preparing for this election.

The only indication of a change of domicile to Louisiana was Lawson's voter registration card and Louisiana Driver's license. Both of these documents were acquired in October of 2019, less than one year before she qualified as a candidate.

On these facts, we find that there is significant evidence that Lawson never changed her domicile to Louisiana. The most generous reading of the evidence is

that she changed her domicile in October of 2019 when she changed her voter registration and driver's license, but that was less than the required one year before qualifying. A childhood home does not remain one's domicile indefinitely and in spite of evidence that establishes that a child has moved away from home and established domicile in another location. Nor is the burden for proving a change in one's domicile lowered when one returns to a previous domicile. Lawson admitted that she considered Virginia her domicile prior to returning to Louisiana. The requirement that a candidate in a judicial election be domiciled in the district for at least 1 year at the time of the election is a qualification mandated by the Louisiana Constitution. The few documents indicating that Lawson is domiciled in Louisiana were acquired in October of 2019, only 9 months before the election in this case. Therefore, in light of all the evidence tending to prove that Lawson remained domiciled in Virginia, it appears that the October 2019 actions were merely a subterfuge to overcome the domicile requirement with actual intent to change domicile only upon victory.

Based upon the forgoing, we hold that Judge Vaughn was manifestly erroneous when he found that Lawson had been domiciled in her electoral district for one year at the time she qualified.

## CONCLUSION

For the aforementioned reasons, we find that this appeal was timely perfected on August 3, 2020. We further find that Lumar/Fiffie presented *prima facie* proof that Lawson was not qualified for this primary election because she had not been domiciled in St. John the Baptist Parish for the required one-year period at the time she qualified, nor did she have a justifiable reason to believe that she had actually filed all required state and federal tax returns for the previous five years. Lawson failed to present sufficient evidence to rebut the showing.

Accordingly, pursuant to La. R.S. 18:494, Atoundra Pierre Lawson is disqualified as a candidate for district judge in the 40th Judicial District; it is directed that the Secretary of State of the State of Louisiana be served with a certified copy of this opinion and is ordered to remove Atoundra Pierre Lawson from the ballot of this election.

**<u>REVERSED</u>**

BRANDON LUMAR AND VERCELL FIFFIE

NO. 20-CA-251

VERSUS

FIFTH CIRCUIT

COURT OF APPEAL

ATOUNDRA PIERRE LAWSON

STATE OF LOUISIANA

**CHEHARDY, J., dissents with reasons.**

I respectfully dissent. Lumar/Fiffie fax filed a Notice of Intention to the Clerk of Court for the Fortieth Judicial District Court on July 31, 2020, to apply to the Court of Appeal, Fifth Circuit, requesting appellate review of the decision rendered by Judge Vaughn at 3:45 PM earlier that day. The original fax-filed document contained a proposed order asking the trial court to set a return date but did not contain a request to set a bond, and as such, no bond was set when the trial judge set the return date for the appeal on the morning of August 3, 2020. At 10:57 AM on August 3, 2020, Lumar/Effie filed a Request for Bond Amount with the Clerk of the 40th Judicial District Court and posted $1,960.00 as an anticipated bond. According to Lumar/Effie, at approximately 1:24 PM on August 3, 2020, the trial judge set the bond at $5,000.00. Lumar/Effie posted an additional amount at 1:47 PM to perfect the bond.

La. R.S. La. R.S. 18:1409(D) provides, in pertinent part, as follows:

> Within twenty-four hours after rendition of judgment, a party aggrieved by the judgment may appeal by obtaining an order of appeal and giving bond for a sum fixed by the court to secure the payment of costs. ... The trial judge shall fix the return day at a time not to exceed three days after rendition of judgment.

Additionally, 18:1413 provides:

> Computation of all time intervals in this Chapter shall include Sundays and other legal holidays. However, if the time interval ends on a Sunday or other legal holiday, then **noon of the next legal day shall be**

**deemed to be the end of the time interval**.

Courts have the duty to interpret laws as legislated and, when possible, to honor the clear meaning of a statute as revealed by its language, purpose, and history. The words of a law are to be understood "according to the common and approved usage of the language." La. R.S. 1:3. When a statute is clear and unambiguous, its language must be given effect as written. La. R.S. 1:4; La. C.C. art. 9.

The language of La. R.S. 18:1409(D) is clear and unambiguous and provides that, for a party to appeal a trial court judgment in an election suit, he must perform two procedural acts: (1) obtain an order of appeal, and (2) give bond for a sum fixed by the court. *Dumas v. Jetson*, 446 So.2d 747, 748-49 (La. App. 1 Cir.1983), *reversed and remanded on other grounds*, 445 So.2d 424 (La. 1984). These procedural steps must be taken "[w]ithin twenty-four hours after rendition of judgment." *Id*.

In accordance with La. R.S.18:1413, only when the time interval in question ends on a Sunday or other legal holiday shall **noon of the next day** be deemed the end of the requisite 24-hour time period for filing the notice of appeal and fixing the bond. But the phrase "Sunday or other legal holiday" in La. R.S. 18:1413 would seem to *exclude* Saturday as a legal holiday when computing the 24-hour filing period required for election cases.

I note, however, that La. R.S. 1:55, entitled "Days of public rest, legal holidays, and half-holidays," states, in pertinent part:

> A. The following shall be days of public rest and legal holidays and half-holidays:
> The following shall be days of public rest and legal holidays:…provided, however, that in the parish of Orleans, the city of Baton Rouge, in each of the parishes comprising the second and sixth congressional districts, except the parish of Ascension, and in each of the parishes comprising the fourteenth and thirty-first judicial districts

of the state, the whole of every Saturday shall be a legal holiday…. (Emphasis added).

The judicial district in which this case arose sits within the second and sixth congressional districts and, thus, Saturday ordinarily is a legal holiday under La. R.S. 1:55. If this general statute delineating Saturday as a legal holiday controls, the determination of what would constitute the end of the time period for perfecting the appeal and bond in election cases would lead to disparate results parish to parish. The most consistent interpretation for the calculation of the end of the time period in accordance with the statutes that control election challenges is that because La. R.S. 18:1413 specifically mentions "Sunday and other legal holidays," it intentionally excludes Saturday as a legal holiday, and appellants would have had only until Saturday, August 1, at 3:45 PM to perfect their appeal and post the bond.

In my view, the majority's reference to La. R.S. 18:493 actually lends additional support to the interpretation that La. R.S. 18:1409(D) and La. R.S. 18:1413 *exclude* Saturday from the computation of time for perfecting an appeal in an election suit. La. R.S. 18:493, which refers to "Saturday, Sunday, or other legal holiday," specifically controls the seven-day period of "[t]ime for objecting to candidacy" in the district court, not to the 24-hour period of time for perfecting an appeal controlled by La. R.S. 18:1409(D). The court must look to La. R.S. 18:1413 when calculating the 24-hour period delineated in La. R.S. 18:1409, not to La. R.S. 18:493. Because R.S. 18:1413 refers only to "Sunday or other legal holiday" and does not include "Saturday," Saturday arguably is *not* a holiday when calculating the 24-hour period within which an election appeal must be perfected.

The district judge in this case rendered judgment at 3:45 PM on July 31, 2020. Arguably, the time interval would have ended on Saturday, August 1, at

3:45 PM. Even if Saturday is considered a legal holiday through application of La. R.S. 1:55, however, Lumar/Fiffie would have had until **no later than noon Monday, August 3, 2020**, under La. R.S. 18:1413 to perfect their appeal bond. Because Lumar/Fiffie did not perfect their appeal bond until Monday, August 3 at 1:47 PM, under either interpretation, they failed to timely perfect their appeal within the period required by statute.

The jurisdiction of the appellate court attaches upon the granting of the order of appeal and the timely filing of the appeal bond. *Alexander v. Shaw-Halder*, 11-1136 (La. App. 5 Cir. 05/08/12), 95 So.3d 1100, 1104. I find appellants failed to accomplish both required procedural acts within the time limitation established by La. R.S. 18:1409(D) and 18:1413. Because the appeal bond was not timely filed, appellate jurisdiction never attached and the appeal should be dismissed.

BRANDON LUMAR AND VERCELL
FIFFIE

NO. 20-CA-251

VERSUS

FIFTH CIRCUIT

COURT OF APPEAL

ATOUNDRA PIERRE LAWSON

STATE OF LOUISIANA


## JOHNSON, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS

I, respectfully, concur in part and dissent in part from the majority opinion on the merits of this case. First, I fully support the majority opinion's determination regarding the timeliness of the appeal. On the issue of whether Ms. Lawson truthfully certified on the her notice of candidacy form that she had filed her federal and states tax returns for the previous five tax years, I find that the trial court was manifestly erroneous in its determination that Ms. Lawson was truthful concerning the filing of her Virginia tax returns. There was no evidence presented by Ms. Lawson at the hearing that proved she mailed her Virginia tax returns on July 20, 2020;[11] thus, there was no evidence to support the trial court's determination. Therefore, I agree with the majority opinion that Ms. Lawson did not have a justifiable reason to believe that she had actually filed all of the required state and federal tax returns.

On the issue of whether Ms. Lawson proved that she intended for Edgard, Louisiana to be her domicile more than one year prior to the signing of notice for candidacy, I dissent from the majority opinion. When reviewing the evidence

_____

[11] Ms. Lawson offered a receipt indicating that she purchased postal stamps. However, the receipt was in no way indicative that she ever used those postal stamps to mail any item or that she used them to mail her Virginia tax returns.

20-CA-251                                    29

presented to the trial court, I cannot find that the trial court was manifestly erroneous in its determination in favor of Ms. Lawson, even though I may have determined a different outcome. Ms. Lawson's testimony, along with scant items of corroborating evidence, lends support to the trial court's conclusion that Ms. Lawson intended to establish her domicile in Edgard.

For the foregoing reasons, I concur in part and dissent in part from the majority opinion on the merits of the appeal. However, I agree that Ms. Lawson should be disqualified as a candidate for district judge in the 40th Judicial District Court, Division "A".

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 10, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-251

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE KIRK A. VAUGHN (DISTRICT JUDGE)
COREY M. OUBRE (APPELLANT)          STAVROS PANAGOULOPOULOS (APPELLEE)     RAY L. WOOD (APPELLEE)

**MAILED**